*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0153p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

HARBI MOHAMAD ISMAT HASSAN,

*Petitioner,*

*v.*

No. 03-4446

ALBERTO GONZALES, Attorney General,

*Respondent.*

---

On Petition for Review of an Order of the Board of Immigration Appeals.
No. A78 381 985.

Argued: March 8, 2005

Decided and Filed: March 31, 2005

Before: MOORE and SUTTON, Circuit Judges; CARMAN, Judge.[*]

---

**COUNSEL**

**ARGUED:** David H. Paruch, Troy, Michigan, for Petitioner. William C. Minick, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION, Washington, D.C., for Respondent. **ON BRIEF:** David H. Paruch, Troy, Michigan, for Petitioner. William C. Minick, Linda S. Wernery, U.S. DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION, Washington, D.C., for Respondent.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge. Petitioner Harbi Mohamad Ismat Hassan ("Hassan") seeks review of a final order from the Board of Immigration Appeals ("BIA") affirming the Immigration Judge's decision to deny Hassan's claims for asylum and withholding of removal under the Immigration and Nationality Act ("INA") and relief under the Convention Against Torture ("CAT").[1] In his petition, Hassan asserts that the Immigration Judge ("IJ") erred on several grounds. Moreover, Hassan argues that the BIA improperly applied its streamlining regulations in affirming the IJ's decision without opinion. Upon review, we conclude that none of Hassan's arguments are persuasive, and therefore we **DENY** the petition for review.

---

[*] The Honorable Gregory W. Carman, United States Court of International Trade, sitting by designation.

[1] Though we denied Hassan's motion for a stay of removal, the removal of an alien does not moot a pending appeal. *Bejjani v. INS*, 271 F.3d 670, 688-89 (6th Cir. 2001).

1

# I. BACKGROUND

Hassan is a twenty-six-year-old Palestinian who is a native of Lebanon. He was born and raised in the Palestinian refugee camp located in Said, Lebanon. He lived in the camp with his family, including his parents, six brothers, and three sisters. At his removal hearing, Hassan testified that while living in the refugee camp, he joined Hamas, which he claims is commonly known in the United States as the Palestine Liberation Organization ("PLO"). Hassan explained that he joined "because [his] financial situation was very bad" and the PLO paid for his college tuition. Joint Appendix ("J.A.") at 89, 69 (Removal Hr'g Tr. at 45, 25). As a member of the PLO, Hassan worked as a driver and message courier. He stated that he "never carried weapons." J.A. at 70 (Removal Hr'g Tr. at 26).

During his time in the refugee camp, Hassan was approached by a radical and more violent organization, known as Sabri Al Bamma.[2] Pet. Br. at 6. Hassan testified that the group was "organizing young men that were between the ages of 21 and 22 so they could be active with operations that were against the peace movement, like having the demonstrations and they wanted to train [him] to use weapons." J.A. at 72 (Removal Hr'g Tr. at 28). After he refused to join the group, Hassan asserts that members of Sabri Al Bamma threatened his life. Specifically, Hassan explained that Sabri Al Bamma had murdered a high-ranking PLO official, for whom Hassan worked, and the official's wife. A member of Sabri Al Bamma referred to the murder of the PLO official and told Hassan "you are not as important as the guy that was in charge, so if you refuse to join with us, what happened to him will happen to you." J.A. at 75 (Removal Hr'g Tr. at 31). Shortly thereafter, a company came to Hassan's school and offered him an opportunity to leave Lebanon and come work in the United States. Hassan paid for the trip by using money from a communal neighborhood fund. Hassan testified that he did not tell his neighbors that he was coming to the United States, but instead told them that he needed the money for school because "the expenses were very high in Beirut." J.A. at 101 (Removal Hr'g Tr. at 57).

On July 6, 2000, Hassan was admitted into the United States as a nonimmigrant exchange visitor authorized to stay until October 5, 2000. On February 5, 2002, the Immigration and Naturalization Service ("INS") served Hassan with a Notice to Appear, charging him with being present in the United States without being admitted or paroled, in violation of § 237(a)(1)(B) of the INA, 8 U.S.C. § 1227(a)(1)(B). At the removal hearing, Hassan conceded his unlawful status, but requested asylum, withholding of removal, and relief under CAT. In support of his request, Hassan asserted that Sabri Al Bamma was still looking for him and if he were ever to return to Lebanon, he would be killed. On July 3, 2002, the IJ heard Hassan's claims and denied his request. Specifically, the IJ found Hassan's testimony to be incredible based on several inconsistencies between his testimony, the asylum application, and the documents he submitted as evidence. Moreover, the IJ held that, even if the testimony was credible, Hassan would not be entitled to relief because "being wanted by a terrorist group in Lebanon" is not "protected by the asylum laws of the country and it certainly doesn't provide a basis for seeking withholding pursuant to the Torture Convention." J.A. at 39 (IJ Decision & Order at 22). Hassan filed a timely notice of appeal to the BIA setting forth his reasons and indicating he would file a separate written brief.[3] Despite receiving an

---

[2]The exact name of the organization is unclear from the record. The transcript of the removal hearing refers to the organization as "Subra Halbana," J.A. at 71 (Removal Hr'g Tr. at 27), which is noted as the phonetic spelling. The Government uses that term in its brief. Resp. Br. at 8. At the removal hearing, the term is alternately used to describe both an organization and a person. J.A. at 71, 85 (Removal Hr'g Tr. at 27, 41). Hassan explained that the organization is known as the "people of the Congress Revolution," which is led by "Subra Halbana." J.A. at 71, 85 (Removal Hr'g Tr. at 27, 41). A newspaper article provided by Hassan as an exhibit refers to the organization as "Fateh the Revolution Council" which is headed by Sabri Al-Banna. J.A. at 130. For the sake of clarity, we adopt Hassan's term "Sabri Al Bamma" as a reference to the organization as a whole.

[3]In the notice to the BIA, Hassan wrote that the grounds for his appeal were: (1) that the IJ's adverse credibility determination was unsupported by the record; (2) that the IJ erred in finding that Hassan did not suffer past persecution; (3) that the IJ erred in concluding that Hassan did not have a well-founded fear of future persecution; (4) that the record revealed that the IJ prejudged the case; and (5) that the IJ erred by refusing to admit Hassan's corroborating evidence. J.A. at 14 (Notice of Appeal to the BIA).

extension of the deadline, Hassan's brief was not filed timely, and therefore was not considered by the BIA. J.A. at 5 (BIA Rejection of Brief). On October 9, 2003, the BIA affirmed the IJ's decision without opinion pursuant to 8 C.F.R. § 1003.1(e)(4). Hassan now petitions this court for review of the denial of his asylum, withholding of removal, and CAT claims.

## II. ANALYSIS

### A. Appellate Jurisdiction

Before proceeding to the merits of Hassan's claims, we must first address this court's jurisdiction to entertain his petition for review. Pursuant to § 242(a)(1) of the INA, we have jurisdiction to review the BIA's decision affirming an IJ's denial of asylum, withholding of removal, and relief under CAT. INA § 242(a)(1); 8 U.S.C. § 1252(a)(1). Section 242(d)(1) states, however, that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1); 8 U.S.C. § 1252(d)(1). We have stated that this requirement is jurisdictional, and thus where a petitioner has failed to exhaust his administrative remedies, "a federal court is without jurisdiction to consider his petition for review." *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994).[4] The Government argues in its brief that we lack jurisdiction over Hassan's petition for review of the IJ's decision because Hassan failed to file timely his brief with the BIA, and therefore did not exhaust all administrative remedies. Because the BIA affirmed the IJ's decision without opinion rather than summarily dismissing Hassan's appeal, we conclude the Government's argument is unconvincing.

It is well established that the BIA "may summarily dismiss any appeal or portion of any appeal in any case in which . . . [t]he party concerned fails to specify the reasons for the appeal on [the notices of appeal] or other document filed therewith." 8 C.F.R. § 1003.1(d)(2)(i)(A). The purpose of the rule is to ensure that the alien "provide meaningful guidance to the BIA by informing the BIA of the precise issues contested on appeal. This specificity requirement may be satisfied in one of two ways: by setting out the reasons on the Notice of Appeal itself *or* by filing a separate brief." *Garcia-Cortez v. Ashcroft*, 366 F.3d 749, 752 (9th Cir. 2004) (internal quotation omitted) (emphasis added). The alien is not required to file a separate written brief, but instead may rely entirely upon the factual or legal basis stated in the notice of appeal.[5] Where the BIA has dismissed an appeal for failure to satisfy the specificity requirement, administrative remedies are unexhausted and a court has no jurisdiction to review the IJ's decision. *Sswajje v. Ashcroft*, 350 F.3d 528, 532 (6th Cir. 2003).

In this case, Hassan timely filed a notice of appeal to the BIA from the IJ's decision, which outlined five specific grounds. *See supra* note 3. He then filed an untimely brief in support of his appeal. The BIA did not take the brief into consideration, but affirmed the IJ's decision without opinion under § 1003.1(e)(4). The streamlined-affirmance-without-opinion procedure is *not* a dismissal, but instead a review of the merits of an appeal. *See Denko v. INS*, 351 F.3d 717, 729 (6th Cir. 2003) (noting that affirmance-without-opinion cases receive full consideration from the BIA). By affirming the IJ's decision without opinion under § 1003.1(e)(4) rather than summarily dismissing it under § 1003.1(d)(2)(A), the BIA found that Hassan had

---

[4] In *Perkovic*, we were interpreting the exhaustion requirement as outlined in 8 U.S.C. § 1105a(c), which has subsequently been repealed and replaced with § 1252(d)(1). Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, § 306, 110 Stat. 3009, 3009-610 (1996). The two provisions are substantially similar and we have applied our holding in *Perkovic* to the new administrative exhaustion requirement in § 1252(d)(1). *See Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004).

[5] We have stated in dicta however, that where the alien *does* file a separate written brief, "all issues not raised in an appellant's briefs [are waived], even if the issue has been raised in the notice of appeal." *Ramani*, 378 F.3d at 559; *Hasan v. Ashcroft*, 397 F.3d 417, 420 (6th Cir. 2005). The rationale underlying this principle is that where a brief is filed with the BIA, the arguments presented within it supersede the statements made in the preliminary notice of appeal. Therefore, the arguments presented in the notice of appeal and not adopted in the subsequently filed brief are waived, unless the BIA addresses them in its decision. This principle does not apply to the situation as in this case where the brief was untimely filed and not considered by the BIA.

satisfied the specificity requirement through his notice of appeal. Furthermore, the five grounds outlined in his notice of appeal to the BIA are the same arguments presented in his petition to this court. Therefore, because the BIA reached the merits of Hassan's appeal, we conclude that he properly exhausted all of his administrative remedies, and thus we have jurisdiction to entertain his petition for review.

## B. The IJ's Decision

Proceeding to the merits of Hassan's claims, we note that because the BIA affirmed the IJ's decision without opinion, "we review the IJ's decision as the final agency decision." *Denko*, 351 F.3d at 726.

### 1. Adverse Credibility Finding

The first issue which Hassan raises in his petition is that the IJ erred in denying his request for asylum, withholding of removal, and relief under CAT on the grounds that his testimony was incredible. We have held that "[c]redibility determinations are considered findings of fact, and are reviewed under the substantial evidence standard." *Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under that standard, findings of fact are treated as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)). In this case, we cannot say that review of the record compels a contrary result.

The Attorney General may grant asylum to an alien who can demonstrate an unwillingness to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.13(a). In this case, the sole ground for Hassan's asylum claim is his testimony that a member of Sabri Al Bamma threatened to kill Hassan if he did not join the organization and that Sabri Al Bamma is still looking for him. The IJ found Hassan to be "completely unbelievable" and his testimony "internally inconsistent," and thus denied his request for relief. J.A. at 25, 38 (IJ Decision & Order at 7, 21). We have stated that though "an adverse credibility finding is afforded substantial deference, the finding must be supported by specific reasons." *Sylla*, 388 F.3d at 926. Moreover, we have noted that "[a]n adverse credibility finding must be based on issues that go to the heart of the applicant's claim. They cannot be based on an irrelevant inconsistency. If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility." *Id.* (internal quotations omitted).

In this case, the IJ based his adverse credibility determination on several inconsistencies between Hassan's testimony, the asylum application, and the documents he submitted as evidence. First, Hassan testified that Sabri Al Bamma had murdered a high-ranking PLO official, for whom Hassan worked, and the official's wife. In support of that testimony, Hassan submitted an undated newspaper article detailing the assassinations of the official and his wife. J.A. at 129. In his asylum application, Hassan stated that the murders occurred in May 1999. In his direct testimony at the removal hearing, however, Hassan stated that the murders occurred in May 2000, two months before he left Lebanon for the United States. When asked about the inconsistency, Hassan stated that it may have happened two months or fourteen months prior to his departure to the United States. The exact date of the assassinations is important because he did not join the PLO until October 1999, and thus was not working for the official in May 1999. Moreover, while the asylum application mentions the assassinations, it neglects to state that he was working for the slain official at the time of the murders.

Second, the IJ found Hassan to be incredible based on his statements regarding his involvement with the PLO. Specifically, Hassan testified on direct examination that he joined the PLO in October 1999 because his family's financial situation was bad and he needed to pay for his college education. Hassan emphasized that he joined the PLO "not in the middle of my studies" but "before I started my studies." J.A. at 87 (Removal Hr'g Tr. at 43). The evidence revealed however that Hassan started college in January 1998,

almost two years before joining the PLO, directly contradicting his testimony. When asked how he afforded school before October 1999, Hassan stated at the hearing for the first time that his brothers who had emigrated to Europe had paid for it, but could not do so any longer. Furthermore, Hassan stated that the duties he performed with the PLO included driving officials and serving as a message courier, but that he never carried a weapon. His PLO identity card, however, lists his rank as "soldier," and a letter from the organization describes him as "Soldier no. 16566" and a "loyal militant." J.A. at 148, 152. Hassan tried to reconcile the inconsistency by stating that the terms reflected the terminology the organization used rather than his actual responsibilities. Lastly, Hassan testified that when he came to the United States he used money from a community fund to pay for the trip, but he did not admit to his neighbors his plans. He told his neighbors that the money was needed for his education because "expenses were very high in Beirut." J.A. at 101 (Removal Hr'g Tr. at 57). He testified that if his neighbors knew he was leaving for the United States, he might have been prevented by the guards at the checkpoint of the refugee camp. In response to a question from the IJ, Hassan testified that the checkpoint is run by guards from the PLO. Earlier in the hearing, however, Hassan stated the PLO was "the one[] that suggested [he] leave the country." J.A. at 86 (Removal Hr'g. Tr. at 42).

When taken together, all of these contradictions which go to the heart of Hassan's asylum claim lead to the conclusion that Hassan is generally not credible. Thus, we conclude the evidentiary record certainly does not compel a contrary credibility determination. Therefore, we affirm the IJ's finding that Hassan failed to demonstrate past persecution or a well-founded fear of future persecution.[6] Moreover, given the credibility determination and because Hassan has failed to establish eligibility for asylum, he cannot satisfy the more stringent standards necessary for withholding of removal pursuant to INA § 241(b)(3) or relief under CAT. *Pilica v. Ashcroft*, 388 F.3d 941, 955 (6th Cir. 2004).

## 2. Exclusion of Evidence

The next issue raised in the petition is that the IJ erred by excluding an untimely filed letter from Hassan's parents, which states that members of the Sabri Al Bamma are still looking for him. Because we conclude that the exclusion of the letter did not amount to a violation of Hassan's right to due process, we deny relief on this ground.

In removal proceedings, an alien is entitled to "a reasonable opportunity . . . to present evidence on the alien's own behalf." INA § 240(b)(4)(B); 8 U.S.C. § 1229a(b)(4)(B). "Evidentiary matters in immigration proceedings, however, are not subject to the Federal Rules of Evidence, and we review evidentiary rulings by IJs only to determine whether such rulings have resulted in a violation of due process." *Singh v. Ashcroft*, 398 F.3d 396, 407-08 (6th Cir. 2005) (internal citation omitted). We review alleged due process violations in removal hearings de novo. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998). A violation of due process occurs when "the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000) (internal quotation omitted).

The regulations governing removal hearings state that though the IJ may extend the filing deadlines, "[i]f an application or document is not filed within the time set by the Immigration Judge, the opportunity to file that application or document shall be deemed waived." 8 C.F.R. § 1003.31(c). In his brief, Hassan concedes that the letter was submitted after the filing deadline, but puts forth the unsupported argument that because the letter is significant, to deny it on the grounds of timeliness is an abuse of discretion. Pet. Br. at 23. The record reveals, however, that there was no good cause for failing to comply with the timing deadlines. Hassan had more than eight months since he first filed his asylum application to procure the letter but did not even ask his parents for it until two weeks *after* the filing deadline had passed.

---

[6]The IJ also found that even taking Hassan's testimony as true, Hassan failed to demonstrate past persecution or a well-founded fear of future persecution on account of political opinion. We need not review this alternative holding, however, because we conclude that the evidence presented in the record does not compel a contrary credibility determination.

Furthermore, the significance of the letter is undercut by the fact that Hassan testified to the same substantive point made in the letter — that members of Sabri Al Bamma are continuing to look for him. *Compare* J.A. at 78 (Removal Hr'g Tr. at 34) *with* J.A. at 122 (Ltr. from Parents).

In sum, we conclude that Hassan had a reasonable opportunity to present evidence on his own behalf and the exclusion of the untimely filed letter did not violate his right to due process.

### 3. Prejudgment

Hassan next argues that his right to due process was violated because the IJ had prejudged the case. Because we conclude that Hassan's argument is not supported by the record, we deny relief on this ground as well.

As we stated above, allegations of due process violations in removal hearings are reviewed de novo. *Mikhailevitch*, 146 F.3d at 391. We have stated that "Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). Though "[t]he IJ is afforded broad discretion to control the manner of interrogation in order to ascertain the truth," *Mikhailevitch*, 146 F.3d at 391 (internal quotation omitted), we recognize that "[a] neutral judge is one of the most basic due process protections." *Reyes-Melendez v. INS*, 342 F.3d 1001, 1006 (9th Cir. 2003) (internal quotation omitted); *see also Ahmed v. Gonzales*, 398 F.3d 722, 725 (6th Cir. 2005) ("It is undisputed that petitioners in such proceedings are entitled to an unbiased arbiter who has not prejudged their claims."). Due process is violated when the IJ "behave[s] not as a neutral fact-finder interested in hearing the petitioner's evidence, but as a partisan adjudicator seeking to intimidate the [alien] and his counsel." *Reyes-Melendez*, 342 F.3d at 1007 (internal quotation omitted) (second alteration in original).

In this case, Hassan cites a number of statements the IJ made in his oral decision regarding Hassan's credibility. Specifically, the IJ referred to Hassan as "completely unbelievable" and his testimony as "inherently incredible," "internally inconsistent," and "nonsensical." J.A. at 25, 27, 38 (IJ Decision & Order at 7, 9, 21). In addition, Hassan argues that the IJ's sarcastic comments mischaracterize Hassan's testimony and reveal a prejudgment in the case. *See, e.g.*, J.A. at 33 (IJ Decision & Order at 16) ("Well how did she afford to go to Syria, how did she afford to buy a bridal gown if they were poor refugees that can't even afford to send him to school. . . ."); J.A. at 39 (IJ Decision & Order at 22) ("Hence, even if you believe one of respondent's stories, take your pick which one, he still loses."). While the language that the IJ used in announcing his decision may have been brusque, we are satisfied that it does not reveal an underlying bias in favor of the Government. Hassan was given a full and fair opportunity to present his case for relief in front of a neutral arbiter. To his detriment, Hassan presented testimony that was contradictory and inconsistent, and as a result, the IJ denied him relief. While the language the IJ employed could have been more artful, we cannot say that Hassan's due process rights were violated.

## C. BIA Streamlining Procedure

The final issue Hassan raises in his petition for review is that the BIA's use of its affirmance-without-opinion procedure was inconsistent with the criteria set forth in 8 C.F.R. § 1003.1(e)(4)(i). Upon review we conclude that the BIA's use of the affirmance-without-opinion procedure was properly invoked, and therefore, we deny Hassan relief on this ground.

Pursuant to 8 C.F.R. § 1003.1(e)(4)(i), a single member of the BIA may affirm the decision of the IJ without opinion if the Board member determines that: (1) "the result reached in the decision under review is correct;" (2) "any errors in the decision under review were harmless or immaterial;" and (3) either that "(A) [t]he issues on appeal are squarely controlled by existing Board or federal court precedent and do not involve the application of precedent to a novel factual situation;" or "(B) [t]he factual and legal issues raised on appeal are not so substantial that the case warrants the issuance of a written opinion in the case." 8

C.F.R. § 1003.1(e)(4)(i).  Hassan asserts that the BIA improperly applied the affirmance-without-opinion procedure because the IJ's decision was incorrect and the errors were not harmless or immaterial.[7]

Though the Government did not challenge our authority to review this issue in its appellate brief or at oral argument, whether an alien may challenge the BIA's use of its streamlining procedure pursuant to the Administrative Procedure Act ("APA") remains an open question before this court. *See Denko*, 351 F.3d at 732 ("Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance. . . .").  We note that the courts of appeals which have addressed the issue have divided on the question of whether judicial review of the BIA's use of the affirmance-without-opinion procedure is appropriate. *Compare Smriko v. Ashcroft*, 387 F.3d 279, 294 (3d Cir. 2004) ("We hold that the issues addressed by single BIA members under § 1003.1(e)(4)(i) of the streamlining regulations are not committed to agency discretion and that the resolutions of those issues are judicially reviewable."); *Batalova v. Ashcroft*, 355 F.3d 1246, 1253 (10th Cir. 2004) (noting that the criteria used to decide whether a case should not be streamlined "are the kinds of issues we routinely consider in reviewing cases, and they have nothing to do with the BIA's caseload or other internal circumstances"); *Haoud v. Ashcroft*, 350 F.3d 201, 206 (1st Cir. 2003) (holding that "the Board's own regulation provides more than enough 'law' by which a court could review the Board's decision to streamline"); *Falcon Carriche v. Ashcroft*, 350 F.3d 845, 852-53 (9th Cir. 2003) (rejecting "the government's argument that the streamlining decision is inherently discretionary" but rather concluding that streamlining decisions based on non-discretionary determinations are subject to ordinary judicial review); *Chong Shin Chen v. Ashcroft*, 378 F.3d 1081, 1087-88 (9th Cir. 2004) (same); *with Tsegay v. Ashcroft*, 386 F.3d 1347, 1356 (10th Cir. 2004) (holding that a court does not have jurisdiction to review the BIA's decision to streamline an appeal); *Ngure v. Ashcroft*, 367 F.3d 975, 983 (8th Cir. 2004) (holding that "the BIA's decision whether to employ the [affirmance-without-opinion] procedure in a particular case is committed to agency discretion and not subject to judicial review").  *But see Begna v. Ashcroft*, 392 F.3d 301, 305 (8th Cir. 2004) (Lay, J. concurring) ("Eighth Circuit precedent holding [that judicial review is unavailable] is ill-reasoned and should be overturned.").  Because the Government did not challenge our authority to review this question, we leave the resolution of the jurisdictional issue for another day and turn to the merits of Hassan's argument.

Pursuant to the APA, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  Hassan argues that the BIA applied the affirmance-without-opinion procedure arbitrarily because the IJ's decision failed to satisfy the first two requirements of § 1003.1(e)(4)(i): the IJ's decision was correct and any errors which may have occurred were harmless or nonmaterial.  As we concluded above, the IJ's decision to deny Hassan asylum, withholding of removal, and relief under CAT was supported by substantial evidence in the record.  Moreover, Hassan has failed to cite any other error committed by the IJ which was harmful or material.  "Assuming, without deciding, that judicial review properly is employed to assess whether the BIA correctly designated a case for summary affirmance," *Denko*, 351 F.3d at 732, we conclude that Hassan has failed to demonstrate that the BIA's decision to streamline was arbitrary or capricious, and therefore we deny Hassan relief on this ground.

---

[7]Hassan argues in his brief that because the BIA affirmed his case without opinion he was denied "the opportunity to obtain a full, de novo review of his claims." Pet. Reply Br. at 6. We find that argument to be wholly without merit. As we mentioned above, cases which are streamlined pursuant to the BIA's affirmance-without-opinion procedure receive full consideration of the merits by the BIA. *Denko*, 351 F.3d at 729. The sole difference between a streamlined case and one which is decided by a three-member panel is that the streamlined case has met the criteria set forth in § 1003.1(e)(4)(i).

Moreover, Hassan incorrectly states that the streamlining decision denied him de novo review of his appeal from the IJ. BIA regulations provide de novo review only for questions of law, while the IJ's factual findings are reviewed for clear error. 8 C.F.R. § 1003.1(d)(3)(i)&(ii). Regardless of whether an appeal is reviewed through the affirmance-without-opinion procedure or by a three-member panel, the standard of review by which the BIA reviews the substance of the alien's claims is the same.

### III.  CONCLUSION

In conclusion, we hold that none of the arguments presented in the petition are persuasive, and therefore we **DENY** Hassan's petition for review.