NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0109n.06
Filed: February 8, 2007

No. 06-3075

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

SHKELQIM KAMBE GOXHAJ,

    Petitioner,

       v.

ALBERTO GONZALES, Attorney General,

    Respondent.

On Appeal from the
Immigration Board of
Appeals

_____/

**Before:**     **GUY, SUHRHEINRICH, and GRIFFIN, Circuit Judges**.

**PER CURIAM.**     Petitioner is an illegal immigrant from Albania. The former Immigration and Naturalization Service (INS)—now part of the Department of Homeland Security—initiated removal proceedings against petitioner. Petitioner responded by requesting asylum, withholding of removal, protection under the Convention Against Torture (CAT), and voluntary departure. The Immigration Judge denied petitioner's requests, and on December 23, 2005, the Board of Immigration Appeals affirmed without opinion. Petitioner appeals and argues that he should be permitted to remain in the United States because he has a well-founded fear of persecution if he is removed to Albania. For the following reasons, we deny the petition for review.

# I.

## A.    Facts

Petitioner offered the following testimony at his removal hearing in Cincinnati. Petitioner was born in Albania in 1968. His father and sister were arrested when he was six years old. His cousin was later arrested for political reasons and, in 1985, another cousin was shot and killed at the Albanian border. At the age of 15, petitioner applied to attend a soccer school, which had been his lifelong dream, but his application was denied. When he turned eighteen, petitioner was placed in military service for two years.

On December 26, 1990, petitioner and some friends had just completed a game of soccer in petitioner's hometown when they decided to go downtown to relax. As petitioner arrived in the downtown area, police began to arrive in riot gear, and a large crowd of people—approximately 1,500—gathered in the area. The people had gathered to protest the police and demand that the government give up power. The police began beating people and using plastic bullets to break up the crowd. Petitioner was struck in the head, causing him to fall down and rendering him unconscious. When he awoke, he was being transported to a military hospital. At the hospital, he was handcuffed and was held in custody there with approximately 200 other people from the riot. After three days at the hospital, where he received no medical treatment, petitioner was released when a group of townspeople attacked the hospital and freed the prisoners.

Upon his release, petitioner was afraid to return home, so he and a friend decided to walk to the Greek border. Petitioner and his friend were fired upon by an Albanian soldier

as they crossed the border—petitioner explained that it was routine for Albanian soldiers to fire upon people crossing the border—but he and his friend made it safely to Greece.

For the next ten years, petitioner lived in Greece at his father-in-law's house. He worked fairly regularly, but had no legal status and was occasionally forced to pay bribes in order to prevent being sent back to Albania. In January of 2001, petitioner obtained a false passport and flew to Mexico. He soon crossed the border into Texas and came to Columbus, Ohio to be with his sister. The INS eventually discovered petitioner in Ohio and instituted proceedings to have him removed from the country.

At his removal hearing, petitioner additionally asserted that his friend who accompanied him from Albania into Greece eventually returned to Albania in 1997 or 1998 to attend his sister's wedding. Petitioner's friend was gunned down in front of his house by men wearing masks. Petitioner was told by his father that his friend was killed by an organization called BRISK, a secret paramilitary organization of the Albanian government. Members of BRISK also came to petitioner's house shortly after the 1990 riot in order to collect photographs and other personal effects of petitioner. Petitioner asserts that the situation in Albania is almost the same as it was before the 1990 riot.

**B.       Immigration Judge's Decision**

After recounting petitioner's removal hearing testimony, the immigration judge applied the facts of petitioner's case to the law regarding asylum. The judge first considered whether petitioner's testimony was credible, and concluded that it was. The judge then considered whether, by his testimony, petitioner had carried his burden of establishing that

he had suffered from past persecution on account of his political opinions or that petitioner had a well-founded fear of future persecution. Despite accepting the credibility of petitioner's testimony, the immigration judge nevertheless concluded that petitioner had not experienced past persecution based on his imputed political opinions. The judge explained that the injuries petitioner incurred from the 1990 riot were a result of the generalized violence of the riot in petitioner's hometown and *not* as a result of past persecution directed toward petitioner because of his political opinions or imputed political opinions. Instead, the judge viewed petitioner's injuries as the result of being "in the wrong place at the wrong time."

The judge also considered whether the shooting incident at the Albanian-Greece border was evidence of past persecution. The judge determined that this incident did not constitute past persecution because the incident merely reflected that it was dangerous for *anyone* to cross the Albanian border at this time. Accordingly, the judge did not view this as evidence of past persecution directed at petitioner.

Next, the judge considered whether petitioner had a well-founded fear of future persecution. The judge accepted petitioner's assertion that the same governmental leaders that were in charge of Albania when petitioner left in 1990 are still in charge today. The judge determined that petitioner may have a subjective fear of returning due to his friend's death and his fear of BRISK, but that there was no objective evidence that the Albanian government would seek to harm petitioner. The judge noted that petitioner was not able to explain why his friend was killed by BRISK or whether his friend's death was linked to his

role in the 1990 riot. Furthermore, the judge noted that members of BRISK had not been to petitioner's house in 14 years and that there was no evidence that BRISK was continuing to target petitioner or his family for persecution. Accordingly, the immigration judge concluded that petitioner had no objective basis for fearing persecution.

For these reasons, the judge concluded that petitioner had not established eligibility for asylum. Based on this finding, the judge also concluded that petitioner could not meet the higher burden of proof to establish withholding of removal and that this request should also be denied. Next, the immigration judge concluded that petitioner had presented no testimony at all regarding the fear of torture and that petitioner's claim under the Convention Against Torture similarly must fail. Finally, the immigration judge denied petitioner's request for voluntary departure.

## C.     Board of Immigration Appeals

Petitioner timely appealed the immigration judge's decision to the Board of Immigration Appeals (BIA). On December 23, 2005, the Board affirmed without opinion the immigration judge's decision.

## II.

## A.     Standard of Review

The Board of Immigration Appeal's determination that petitioner was not eligible for asylum must be upheld if "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992) (internal quotation marks and citation omitted). "It can be reversed only if the evidence presented by

[petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *Id.* The Supreme Court elaborated that to reverse the BIA finding, the court must find that the evidence not only supports a finding of persecution, but compels it—and that the evidence also compels that petitioner had a well-founded fear that he would be persecuted because of his political opinion. *Id.* n.1. A reviewing court may not reverse merely because it would have decided the case differently. *See Singh v. Ashcroft*, 398 F.3d 396, 404 (6th Cir. 2005). Finally, where the BIA affirms the immigration judge's decision without opinion, "we review the [immigration judge's] decision as the final agency decision." *Hassan v. Gonzales*, 403 F.3d 429, 433 (6th Cir. 2005) (internal quotation marks and citation omitted).

**B.      Asylum**

The Supreme Court stated the standard for granting asylum in *I.N.S. v. Elias-Zacarias*:

> Section 208(a) of the Immigration and Nationality Act [INA], 8 U.S.C. § 1158(a), authorizes the Attorney General, in his discretion, to grant asylum to an alien who is a "refugee" as defined in the Act, *i.e.*, an alien who is unable or unwilling to return to his home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A).

502 U.S. at 481 (1992). In *United States v. Cardoza-Fonseca*, the Supreme Court explained that the well-founded-fear standard includes both a subjective and an objective component, and also that the standard is less than a "more likely than not" standard. 480 U.S. 421, 431 (1987). Petitioner argues that the immigration judge failed to properly apply the legal standard for asylum. We disagree.

The immigration judge considered petitioner's testimony and determined that petitioner was credible. The judge then applied the facts of petitioner's case to the proper legal standard for asylum and concluded that petitioner's testimony did not support a finding either of past persecution or of a well-founded fear of future persecution. The judge explained that petitioner exhibited a subjective fear of being persecuted if he returns to Albania, but that the limited facts presented in petitioner's testimony, without further evidence of persecution directed at petitioner, did not sufficiently support a finding of a well-founded fear of persecution. *See Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005) ("While recognizing that corroboration is not required, we have also stated that even if the applicant is credible, '[t]he absence of [reasonably available] corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof.'") (citations omitted) (alterations in original). We have considered petitioner's testimony and the appropriate legal standards for asylum, and we find that the district court's decision to deny asylum was supported by substantial evidence from the record.

## C.    Withholding of Removal

As to petitioner's request for withholding of removal, the immigration judge concluded that "[b]ecause [petitioner] has not satisfied the lower burden of proof for asylum the Court finds that [petitioner] has not established his higher burden of proof for withholding of removal . . . ." We agree.

**D.     Convention Against Torture (CAT) and Voluntary Departure**

Petitioner devoted his brief to the issue of asylum and did not present any additional arguments as to how the immigration judge erred in denying petitioner's CAT claim or request for voluntary departure.  We have reviewed the immigration judge's analysis of these issues and find both that the analysis was supported by substantial evidence and was without error.

The petition for review is **DENIED**.