NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0025n.06
Filed: January 9, 2008

No. 06-4381

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

HAYMOUT SAMBA MBODJ,

    Petitioner,

v.

MICHAEL B. MUKASEY, Attorney General of
the United States,

    Respondent.

_____/

ON APPEAL FROM THE BOARD OF
IMMIGRATION APPEALS

BEFORE:    KENNEDY, MARTIN, and CLAY, Circuit Judges.

    **CLAY, Circuit Judge.**  Petitioner Haymout Samba Mbodj seeks review of the Board of

Immigration Appeals' September 26, 2006 decision upholding the immigration judge's denial of his

application for asylum pursuant to 8 U.S.C. § 1158(a), withholding of removal pursuant to §

241(b)(3) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1231(b)(3), and withholding

of removal under the Convention Against Torture. For the reasons stated below, we **DENY** the

petition for review.

BACKGROUND

Mbodj is a native Mauritanian whose asylum claim is based on his fear that he will be tortured and possibly killed in Mauritania due to his Fulani ethnicity. He claims that he arrived in the United States on July 9, 2002 using a fraudulent passport. On November 25, 2002, Mbodj applied for asylum and withholding of removal pursuant to § 241(b)(3) of the INA, 8 U.S.C. § 1231(b)(3), and the Convention Against Torture.

Mbodj's case was referred to the Immigration Court and heard by an immigration judge on April 5, 2005. At the hearing, Mbodj testified that he was arrested by Mauritanian soldiers on June 15, 1989 and was kept in jail until July 17, 1989. He claimed that the arrest occurred as a result of his cultural activities related to the Fulani ethnic group such as teaching the Pular language. Mbodj testified that upon his arrest police questioned him as to his involvement with various political movements. The soldiers subsequently deported him to Senegal. Around this time the Mauritanian government expelled thousands of ethnic Fulanis, claiming that they were actually Senegalese and not Mauritanian.

Mbodj further testified regarding his life in Senegal. According to his testimony, he joined his wife and children (who had been deported at the time of his arrest) at a refugee camp in Thilogne, Senegal. He then began working in Dakar, Senegal and remained there until 2002. Mbodj claimed that the reason for his departure from Senegal was the Senegalese government's effort to repatriate native Mauritanians, many of whom had been deported at the time he was expelled from Mauritania. Mbodj testified that he was afraid to return to Mauritania because people who had tried to return in the early 1990s had been persecuted upon their return and because the government continued to

persecute journalists and political activists. Mbodj claimed that if he returned he would assert his rights, and as a result he could be arrested, jailed or killed.

At the immigration hearing, the government attorney asked Mbodj about his arrival in the United States. Mbodj testified that he used a passport with his picture but someone else's name on it. Mbodj testified to the name that was on the passport with some uncertainty and couldn't remember the country of the passport. Mbodj claimed that a guard took the passport, I-94, and plane ticket from him at the airport.

When questioned about the rest of his family, Mbodj stated that his wife and two of his children remained in Senegal. The other three children were in school in France. He testified that the children in France had Senegalese passports but that none of the family members were Senegalese citizens. Mbodj explained his children's passports by suggesting that the passports were given to them as a favor from the Senegalese government since they were good enough students to get admitted to French schools.

The immigration judge in an oral decision denied Mbodj asylum and withholding of removal. The judge based his decision on findings that Mbodj could return to Senegal or Mauritania and that Mbodj had not proven that his asylum application was filed within a year of his entry into the United States. Mbodj filed a timely appeal to the Board of Immigration Appeals ("BIA"). On appeal to the BIA, Mbodj raised substantially the same claims that he raises in his petition for review to this Court. He claimed that the immigration judge erred in finding that Mbodj could reenter Mauritania, that Mbodj was firmly resettled, and that Mbodj's asylum application was untimely.

The BIA dismissed his appeal. In its opinion, the BIA acknowledged that the immigration judge had not made an explicit credibility determination but stated that even if Mbodj was deemed credible, he did not meet "his burden of establishing eligibility for relief." The BIA found no clear error regarding the immigration judge's determination that Mbodj was eligible to return to Mauritania, and the BIA found it unnecessary to reach the issue of firm resettlement in Senegal.

ANALYSIS

I.

The government asserts that we have no jurisdiction over Mbodj's asylum claim. We generally lack jurisdiction to review the BIA's determination that an asylum application is time-barred. 8 U.S.C. § 1158(a)(3). Despite this statutory restriction, pursuant to the Real ID Act, we may review "constitutional claims or questions of law" arising in immigration decisions that are otherwise unreviewable. 8 U.S.C. § 1252(a)(2)(D). *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747 n.1 (6th Cir. 2006). We have held that § 1158(a)(3) bars appellate "review of asylum applications denied for untimeliness only when the appeal seeks review of discretionary or factual questions, but not when the appeal seeks review of constitutional claims or matters of statutory construction." *Id.* at 748; *Shkulaku-Purballori v. Mukasey*, No. 06-4062, slip op. at 2-3 (6th Cir. Dec. 19, 2007). As a result, we must make "a particularized inquiry into the nature of a petitioner's claim . . . to determine whether [we have] jurisdiction to review a denial of an asylum application based on timeliness." *Almuhtaseb*, 453 F.3d at 748.

4

In this case, we have jurisdiction to review the denial of Mbodj's asylum application because Mbodj raises a constitutional claim regarding an alleged violation of his right to due process. Mbodj claims the immigration judge imposed upon him an insurmountable burden of proof by deeming his testimony insufficient to satisfy the clear and convincing evidence standard for proving the timeliness of his asylum application. "[A]llegations of due process violations in removal hearings are reviewed *de novo*." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005).

Mbodj argues that the immigration judge misconstrued the law by requiring evidence beyond Mbodj's testimony to corroborate his claimed date of entry. He claims that this requirement of corroborating evidence created an insurmountable burden for his asylum claim and resulted in a denial of due process. The government counters that since there was a reasoned basis for the immigration judge's determination that Mbodj's asylum application was untimely, there was no due process violation.

An asylum seeker has a Fifth Amendment right to due process in removal hearings. *Hassan v. Gonzales*, 403 F.3d at 436. "A violation of due process occurs when the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case." *Id.* (quoting *Ladha v. INS*, 215 F.3d 889, 904 (9th Cir. 2000)). Thus, Mbodj must show that the immigration judge's corroboration requirement denied him a "full and fair hearing." *Id.*

Mbodj had the burden to prove "by clear and convincing evidence" that his application for asylum was filed within a year of his entry in the United States. 8 U.S.C. § 1158(a)(2)(B). The immigration judge found Mbodj's application untimely because Mbodj had not proven his date of entry by clear and convincing evidence. In making this determination, the judge stated: "[o]ther than

his own testimony regarding his date of arrival, we have no evidence whatsoever." (J.A. 23.) However, the immigration judge made no specific findings regarding the credibility of Mbodj's testimony about the date of his arrival in the United States. On appeal, the BIA took note of this omission but found that even if Mbodj's testimony was credible, he had not met his burden to prove by clear and convincing evidence that his asylum application was timely. Mbodj claims that this decision improperly imposed upon him the burden of producing corroborating evidence regardless of his credibility. However, Mbodj's argument is foreclosed by this Court's precedent.

The regulations governing asylum hearings state that "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. §§ 208.13 (a), 208.16(b). The BIA has clarified that "where an alien's testimony is the only evidence available, it can suffice where the testimony is believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of the alien's alleged fear." *In re M-D-*, 21 I. & N. Dec. 1180, 1182 (BIA 1998). However, the BIA also requires corroborating evidence or an explanation for its absence "where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim." *In re S-M-J-*, 21 I. & N. Dec. 722, 725 (BIA 1997). "The absence of such corroborating evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Id.* at 725-26. Although the Ninth Circuit has rejected this corroboration rule when an asylum applicant has been determined to be credible, *Ladha*, 215 F.3d at 901, we have expressly approved the BIA's corroboration rule regardless of the credibility of the asylum applicant. *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004).

Despite the persuasiveness of Mbodj's argument that testimony that is deemed credible should be sufficient to satisfy his evidentiary burden, Sixth Circuit precedent clearly states the contrary. Thus, Mbodj's due process claim is without merit since the decisions of the BIA and the immigration judge did not deny Mbodj a "full and fair hearing." As a result, the immigration judge's denial of Mbodj's asylum application due to Mbodj's failure to prove the timeliness of his application by clear and convincing evidence must stand.

## II.

We will not address the immigration judge's denial of withholding of removal pursuant to the INA and the Convention Against Torture since Mbodj waives these arguments in his brief by only discussing his asylum claims, *Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005), and by stating that the untimeliness issue is dispositive of all his claims. (Pet. Reply Br. at 4.) Petitioner's statement constitutes an implicit waiver of his remaining claims since there is no time bar for withholding of removal claims. *See* 8 C.F.R. § 208.16(c)(2).

## CONCLUSION

For the foregoing reasons we **DENY** Mbodj's petition for review of the BIA's denial of his application for asylum and withholding of removal.