NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a1164n.06

No. 11-4206

## UNITED STATES COURT OF APPEALS
### FOR THE SIXTH CIRCUIT

**FILED**
*Nov 08, 2012*
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| WINNIE NJERI KEMBOI, JOHN CHERUIYOT KEMBOI, | ) ) ) |
| Petitioners, | ) ) |
| v. | ) ON PETITION FOR REVIEW ) FROM AN ORDER OF THE |
| ERIC H. HOLDER, JR., United States Attorney General, | ) BOARD OF IMMIGRATION ) APPEALS ) |
| Respondent. | ) |

Before: MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. Winnie Njeri Kemboi and her husband, John, both natives and citizens of Kenya, petition for review of an order of the Board of Immigration Appeals denying their applications for asylum and withholding of removal, and her application for protection under the United Nations' Convention Against Torture. We deny the petition.

I.

Kemboi and John entered the United States as non-immigrant students in 2002 and 2003, respectively. They married in 2004. By 2008, they were no longer students. Kemboi applied for asylum and withholding of removal the following year, and included John on her application as a derivative beneficiary. Kemboi testified to the following during her removal hearing.

Kemboi is a member of the Kikuyu tribe, and John is a member of the Kalenjin tribe. Kemboi's marriage to a Kalenjin is common knowledge in Kenya because her family held a marriage celebration. Her inter-tribal marriage was not a problem until 2007, when tensions between the two tribes arose as a result of a disputed presidential election. In February 2009, members of the Mungiki, a sect of the Kikuyu, went to Kemboi's father's home and threatened him. Kemboi's nephew Brian was present and witnessed the threats. The Mungiki accused Kemboi's father of betraying the Kikuyu by letting his daughter marry a Kalenjin. According to Kemboi's asylum application, the Mungiki left her father and nephew unharmed after her father paid them 20,000 shillings (about $235).

In April 2009, someone burned down Kemboi's father's grocery shop. No one saw who did it, but her family suspected the Mugiki. After that, Kemboi's father received an anonymous note that threatened her. It said "Winnie! Winnie! the betrayer . . . we are waiting for you . . . . Whenever you come back we will circumcise you in the market place and leave you there to die as a lesson to the Kikuyu women . . . that none of our women should be married [to a Kalenjin.]" And on December 23, 2009, someone stole her family's goat. Goats are important to holiday celebrations such as Christmas. Thus, her family believed that the Mungiki stole the goat to remind the family that they should not be happy.

Kemboi testified that she first learned about the February 2009 incident in April 2009, when she received a notarized letter from her sister Marcy. Kemboi explained that her family did not mention it sooner because they did not want to break up her marriage.

Kemboi's husband and brother also testified during the hearing. They both said that Kemboi knew about the February 2009 incident before April 2009. John testified that Kemboi knew about the incident a "few weeks" after it had occurred. And Kemboi's brother testified that he discussed the incident with Kemboi less than two weeks after it.

In further support of her asylum application, Kemboi timely filed documentary evidence consisting mostly of newspaper articles. She also submitted letters from her sister Judy, her nephew Brian, and her brother-in-law Julius, but she did not file them until nine days after the filing deadline. In a motion to file the letters late, Kemboi explained that the letters' arrival was delayed due to "unforeseen circumstances regarding international mail." Two of the letters—the ones from Judy and Brian—were addressed to New York, Ohio rather than Newark, Ohio. The IJ denied the motion, concluding that Kemboi could have obtained the letters earlier had she been diligent.

The IJ denied Kemboi's asylum application, reasoning that she did not provide sufficient, credible evidence to prove past persecution, and that even if the February 2009 incident occurred as alleged, it did not rise to the level of persecution. The IJ also found that Kemboi did not have a reasonable fear of future persecution both because her testimony was not credible, and because there was no evidence that her family has had any problems with the Mungiki since February 2009, when her father paid them off. The IJ denied Kemboi's application for withholding of removal because she did not establish that it was more likely than not that her life or freedom would be threatened if she returned to Kenya. Finally, the IJ denied Kemboi's application for relief under the United Nations' Convention Against Torture because she did not prove that it was more likely than not that she would be tortured if she returned to Kenya.

Kemboi appealed to the Board of Immigration Appeals. Following the IJ's reasoning, the Board issued an opinion affirming the denial of all relief. This petition followed.

II.

Where, as here, the Board issues its own opinion, we review that opinion as the final agency determination; but we also review the IJ's decision to the extent the Board adopted its reasoning. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). We review questions of law de novo and factual findings, including credibility determinations, for substantial evidence, reversing only if the evidence presented compels a contrary conclusion. *Id.* at 246–47.

Kemboi argues that the IJ and the Board erred in denying her relief. To prevail on her asylum claim, Kemboi must establish that she is unable to return to Kenya because she either suffered past persecution, or has a well-founded fear of future persecution, because of her inter-tribal marriage. *See* 8 U.S.C. § 1158(b)(1)(B); *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004).

Kemboi argues that the IJ violated her right to due process by refusing to consider the three letters that she filed nine days late. To establish a due process violation, Kemboi must show that there was a defect in the removal proceeding, and that she was prejudiced by the defect. *See* *Abdallahi v. Holder*, 690 F.3d 467, 472 (6th Cir. 2012).

There was no defect here. When a "document is not filed within the time set by the Immigration Judge, the opportunity to file that . . . document [is] deemed waived." *Id.* Kemboi concedes that she filed the letters late. And the record contains substantial evidence to support the IJ's conclusion that Kemboi could have filed the letter on time. Although Kemboi applied for asylum in June 2009, she did not request the letters from her family until over eight months

later—just one month before the proceeding. Had she requested the letters earlier, there would have been plenty of time to accommodate potential delivery problems. Kemboi therefore cannot show that the IJ violated her right to due process. *See Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005); *Singh v. Ashcroft*, 398 F.3d 396, 406 (6th Cir. 2005).

Kemboi also challenges the IJ's finding that she was not credible, and as a result, that she did not have a subjectively genuine fear of persecution. Specifically, Kemboi argues that the IJ should not have discredited her testimony without first giving her an opportunity to address the inconsistency between her testimony and that of her husband and brother regarding how she learned of the February 2009 incident. But even if we assume Kemboi is correct on that point, her petition still fails because she cannot show that the record compels the conclusion that her fear of persecution was objectively reasonable.

"An applicant's fear of persecution must be both subjectively genuine and objectively reasonable." *Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). "An applicant must therefore actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an objective situation under which his fear can be deemed reasonable." *Id.* (internal quotation marks omitted). Here, after an extensive analysis, the IJ concluded that none of the evidence proffered by Kemboi substantiated her claim that the Mungiki would actively seek out Kemboi if she were to return to Kenya. The IJ discredited the written threat produced by Kemboi based on concerns about its authenticity and chain of custody and gave limited weight to the testimony of Kemboi's husband and brother, as well as the two letters detailing the February 2009

incident, due to their basis in hearsay. In addition, the IJ noted that Kemboi had not produced evidence of any further threats from the Mungiki after the February 2009 incident.

Kemboi's argument that the IJ afforded improper weight to these pieces of evidence is unavailing under the highly deferential standard that we apply. Thus, we affirm the Board's decision on Kemboi's application for asylum and withholding of removal.

Finally, Kemboi argues that the Board erred in affirming the IJ's denial of protection under the United Nations' Convention Against Torture. To be eligible for Convention Against Torture protection, an alien must prove that it is "more likely than not that . . . she would be tortured if removed to" her home country. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." *Id.* § 1208.16(a)(1). Kemboi does not explain how the threat of Mungiki violence amounts to an act "by or at the instigation of or with the consent or acquiescence of" a government official. In fact, Kemboi asserts only that the government is unable to control the Mungiki, not that the government has acquiesced to their violence. And during her testimony, she acknowledged that Kenya has outlawed the Mungiki. Kemboi also submitted evidence showing that Kenya has outlawed female genital mutilation, and that it is attempting to suppress the Mungiki. Kemboi has not pointed to any evidence that compels us to conclude she is entitled to Convention Against Torture protection.

The petition for review is denied.