NOT RECOMMENDED FOR PUBLICATION
File Name: 18a0215n.06

No. 17-3796

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GWAMAKA ABELY MWAMLENGA,        )
                                )
        Petitioner,             )
                                )
    v.                          )
                                )
JEFFERSON B. SESSIONS, III, Attorney General,  )
                                )
        Respondent.             )
                                )
                                )

**FILED**
Apr 26, 2018
DEBORAH S. HUNT, Clerk

ON PETITION FOR REVIEW
FROM THE UNITED STATES
BOARD OF IMMIGRATION
APPEALS

BEFORE: BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

Petitioner Gwamaka Abely Mwamlenga seeks review of the Board of Immigration Appeals (BIA) decision denying his application to adjust his immigration status and ordering his removal. Mwamlenga now contends that the immigration judge (IJ) (1) erred in finding him not credible and (2) violated his due-process rights by admitting into evidence an I-9 form that was not provided to him at least 15 days before the hearing, as required by the immigration court's practice manual. Because petitioner's arguments are meritless, we deny his petition.

I.

Mwamlenga initially came to the United States from Tanzania in 2012 on a student visa. Unfortunately, however, halfway through petitioner's first semester of college his brother passed away. His brother had been paying his tuition and expenses, and without the financial means to continue, petitioner dropped out of college. In June of 2013, he applied for a job with Charter

HR. Petitioner filled out an I-9 employment eligibility form, in which he claimed under penalty of perjury that he was a United States citizen. After two weeks at the company, his supervisor told him that there was a problem with his paperwork and that the "E-Verify" system reported that he was not authorized to work. Mwamlenga knew he could not legally work, so he did not attempt to fix the issue, which he could have done by going to a Social Security Administration office and contesting the "E-Verify" report. Charter HR then terminated his employment.

In July of 2013, the government instituted removal proceedings against Mwamlenga. In September of that year he married Tiffany Luke, who filed on his behalf an I-130 petition to change Mwamlenga's status on the basis of their marriage. The parties appeared for a merits hearing on the government's removal petition in July of 2014, during which petitioner testified. The IJ found that Mwamlenga was not credible because he "was nonresponsive to questions from the [government] counsel and the [IJ] and failed to explain prior false statements when asked to do so." Ultimately, the IJ denied petitioner's application to change his status and ordered him removed to Tanzania under the Immigration and Nationality Act (INA), finding that "he had not establish[ed] that he did not knowingly and willfully make a false claim to U.S. citizenship."

Mwamlenga timely appealed the IJ's decision to the BIA, raising issues with the IJ's credibility determination against him and an alleged due-process violation because the government presented his I-9 form as evidence at the hearing without previously providing it to him. The BIA affirmed and dismissed Mwamlenga's petition. On the credibility issue, the BIA held that, even ignoring the IJ's credibility determination, Mwamlenga's own testimony established that he checked the box on the I-9 form that claimed he was a United States citizen and immediately knew he could not fix the issue at a local Social Security office because he was

not permitted to work. Thus, reasoned the BIA, on petitioner's own testimony—and without accepting the IJ's credibility determination—the government had established grounds for removal. On his due-process challenge to the admission of the I-9 form, the BIA found that the form was admissible in the agency proceedings, and held that petitioner could not establish any prejudice from its admission. As a result, the BIA affirmed the IJ's decision and dismissed the appeal.

II.

When the BIA issues a separate opinion upon review of an IJ's decision, we review the BIA ruling as the final agency determination. *Kamar v. Sessions*, 875 F.3d 811, 817 (6th Cir. 2017). To the extent the BIA adopts the IJ's reasoning, however, we also review the IJ's decision. *Fisenko v. Lynch*, 826 F.3d 287, 290 (6th Cir. 2016). We review legal determinations de novo, but grant substantial deference to the BIA's interpretation of the INA and accompanying regulations. *Morgan v. Kiesler*, 507 F.3d 1053, 1057 (6th Cir. 2007). Under the substantial evidence standard, factual determinations are sustained if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Al-Ghorbani v. Holder*, 585 F.3d 980, 991 (6th Cir. 2009) (internal quotation marks and citation omitted); *see also* 8 U.S.C. § 1252(b)(4)(B). We will not reverse such findings simply because we would have decided them differently. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). We review de novo alleged due-process violations regarding the manner in which a deportation hearing was conducted. *Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005).

III.

Petitioner first challenges the IJ's credibility determination. But because the BIA did not rely upon this credibility determination in making its decision, which is the agency decision that we review in this case, his claim of error fails.

While a non-immigrant alien may seek adjustment of his status to that of a person admitted to permanent residence in the United States, *see* 8 U.S.C. § 1255(a)—as Mwamlenga did here—the "alien bears the burden of establishing that he is 'clearly and beyond [a] doubt entitled to be admitted and is not inadmissible.'" *Ferrans v. Holder*, 612 F.3d 528, 531 (6th Cir. 2010) (quoting *Matovski v. Gonzales*, 492 F.3d 722, 738 (6th Cir. 2007)). And under 8 U.S.C. § 1227(a)(3)(D)(i) and § 1182(a)(6)(C)(ii)(I), "[a]ny alien who falsely represents, or has falsely represented, himself to be a citizen of the United States for any purpose or benefit under [the INA] or any Federal or State law is deportable," or "inadmissible." Indeed, falsely claiming citizen status on an I-9 form meets the definition of such a "false[] represent[ation]." *Ferrans*, 612 F.3d at 532.

Here, the BIA found that "[w]hile [Mwamlenga] disputes the [IJ]'s adverse credibility determination on appeal," the record from the hearing established that he claimed to be a United States citizen on his I-9 form, and "he did not go to the [Social Security Administration] to contest the finding [that he was unable to work] because he knew he could not prove he is a United States citizen, as he represented on the Form I-9 in order to work." In other words, the BIA did not rely on the IJ's credibility finding in affirming the removal decision. When the BIA issues its own decision and reasoning, we review that opinion. *Kamar*, 875 F.3d at 817. And so, even assuming petitioner is correct in his challenge to the IJ's credibility finding, that finding is irrelevant to the agency determination in this case.

Instead, the BIA had ample evidence to support its conclusion that that Mwamlenga was removable under 8 U.S.C. § 1227(a)(3)(D)(i), and not eligible for an adjustment of status under § 1255(a). Petitioner admitted that he checked the box for United States citizens on his signed I-9 form under penalty of perjury. He then testified that he did not go to a Social Security office to contest the initial finding that he was ineligible to work because he knew he could not confirm that he was a citizen, even though he so claimed on the I-9 form. This evidence, wholly separate from Mwamlenga's credibility, was sufficient to prove that he falsely claimed citizen status and was removable and ineligible for adjustment of status. *Ferrans*, 612 F.3d at 531–32.

IV.

Next, petitioner claims that he was denied due process by the admission of the I-9 form without it being provided to him at least 15 days before the hearing. This argument also lacks merit.

"Fifth Amendment guarantees of due process extend to aliens in [removal] proceedings, entitling them to a full and fair hearing. To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to a denial of justice." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001) (internal quotation and citations omitted). "[R]eviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceedings; and second, whether the alien was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). "To establish the requisite prejudice, the petitioner must show that the due process violations led to a substantially different outcome from that which would have occurred in the absence of those violations." *Zheng v. Lynch*, 819 F.3d 287, 297 (6th Cir. 2016) (alterations and internal quotation marks omitted).

Mwamlenga argues that the admission of the I-9 form was improper because the Immigration Court Practice Manual requires that all exhibits be filed with the IJ and opposing party at least 15 days before the removal hearing, and counsel for the government intentionally hid the I-9 form until the last minute. Petitioner is correct that "filings must be submitted at least fifteen (15) days in advance of the hearing," under the immigration court's own operating procedures. Immigration Court Practice Manual § 3.1(b)(ii)(A). But he fails to note that a violation of this rule in no way requires the remedy of exclusion of the late-filed evidence. The manual provides that "[t]he untimely submission of a filing *may* have serious consequences," but that "[t]he Immigration Judge retains the authority to determine how to treat an untimely filing." § 3.1(d)(ii) (emphasis added). In fact, the practice manual notes that exclusion of an untimely exhibit is a consequence that is only applicable "sometimes." *Id*. And given that petitioner never objected to the admission of the I-9 form, it is unclear how the IJ might have abused its discretion in admitting it. *See Singh v. Ashcroft*, 398 F.3d 396, 406–07 (6th Cir. 2005) (noting the broad discretion IJs have in making evidentiary determinations).

Furthermore, we see no "fundamental unfairness" resulting from the admission of the I-9 form at the removal hearing despite that it was not timely provided to Mwamlenga. *See Huicochea-Gomez*, 237 F.3d at 699. Petitioner's own testimony about the jobs he had after dropping out of college led to discussion of Charter HR. (A.R. 97-99). Before even being presented with the I-9 form, Mwamlenga testified that he remembered having to answer questions about whether he was authorized to work in the United States when applying for that job. When he was presented with the I-9 form, he had no trouble identifying it as the document he filled out to apply to Charter HR. While he could not explain his reasoning in checking the box denoting that he was a citizen of the United States, this confusion did not relate to the

existence of the form. As a result, petitioner was able to testify candidly about what happened when "E-Verify" returned with a problem relating to his application, as well as his knowledge at the time, i.e., that he could not sort out the problem because he was not permitted to work. Thus, it is clear that the contents of the I-9 form did not take him by surprise, and Mwamlanga was not prejudiced by the form's admission.

In short, the I-9 form was admissible evidence at the removal hearing, *Matter of Bett*, 26 I&N Dec. 437, 441 (BIA 2014), and Mwamlenga has not demonstrated any prejudice arising from the government's failure to provide him with the I-9 form at least 15 days beforehand. His due-process claim therefore fails. *Zheng*, 819 F.3d at 296–97.

## V.

For these reasons, we deny Mwamlenga's petition for review.