NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0958n.06
Filed: December 8, 2005

No. 04-3774

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| Oumar Balde, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | ON PETITION FOR REVIEW FROM |
| v. | ) | THE BOARD OF IMMIGRATION |
| | ) | APPEALS |
| Alberto R. Gonzales, | ) | |
| | ) | |
| Respondent. | ) | |

Before: SILER and SUTTON, Circuit Judges; SHARP, District Judge.[*]

PER CURIAM. Oumar Balde, a native of Guinea, challenges the denial of his application for asylum, withholding of removal and protection under the Convention Against Torture. An Immigration Judge (IJ) found his testimony incredible and denied his application. The Board of Immigration Appeals (BIA) affirmed without opinion. Because the IJ's decision is supported by substantial evidence, we deny the petition for review.

I.

In 1997, while living in Guinea and working as a merchant selling "batteries and notebooks

---

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by designation.

and other items" off an outdoor table in a market in Guingueldou, J.A. at 56, 149, Balde allegedly joined the Rassemblement du Peuple de Guinee ("RPG"), J.A. at 57, a political party headed by a man named Alpha Condé. According to Balde, he became "very active politically for RPG," J.A. at 149, traveling to various villages to inform people about the RPG and to campaign for Alpha Condé in the then-upcoming elections. J.A. at 58. Although Balde could recall the names of several of the villages he visited and that he did not go on these trips alone, he could not recall the names of any RPG members who accompanied him. *Id.* Balde also claimed to have attended an average of three RPG meetings a month, during which either Alpha Condé or Fonte Bonguia, Condé's Secretary, would give speeches. J.A. at 59.

On December 14, 1998, Alpha Condé lost to Lansana Conte in the presidential election. Following these elections, Balde learned from "the newspaper and also [ ] the T.V." that Condé had been arrested. J.A. at 60. Balde participated in a street demonstration on December 16, 1998 to protest Condé's arrest. *Id.* A short time later, in January of 1999, Balde was arrested while attending a RPG meeting in Dixinn. J.A. at 63. Then, his testimony continued, he was taken to the Alpha Yaya camp, where he was interrogated, beaten, tortured with electricity, held in a small windowless cell with "no facilit[ies]" and forced to work outside in the cold wearing only underwear. J.A. at 60–71. Eight months later, on August 20, 1999, the authorities released Balde on the condition that he report to the police station once a month. J.A. at 75. Sick as a result of his imprisonment, Balde did not report to the police as ordered. J.A. at 73. Balde testified that on "February 15, 2000, after having been summoned by police, he had been beaten and told to report

- 2 -

to police three times monthly and not to tell anyone about the conditions at the camp." J.A. at 73-74. Balde fled to the United States in March 2000. J.A. at 73–75, 78.

Balde testified that he entered the United States under a false Guinean passport on March 27, 2000 and that he was accompanied by Manmadou Saliou Diallo. J.A. at 75–76, 78, 154. Balde then traveled alone by bus from New York to Memphis. J.A. at 79-80. However, according to the Department of Homeland Security, "no one named Manmadou Saliou Diallo had arrived in the United States at JFK on March 27, 2000." J.A. at 97-100. Rather, Department of Homeland Security records show that Manmadou Saliou Diallo arrived in New York on March 23, 2000. J.A. at 98. After being served with a Notice to Appear, he conceded his removability and submitted an application for political asylum, withholding of removal, and protection under the Convention Against Torture.

After a hearing on June 9, 2003, the IJ denied Balde's application on the grounds that his testimony was not credible and that he had failed to meet his burden of proof. J.A. at 46–47, 49. In support of this finding, the IJ cited inconsistencies in Balde's testimony, his demeanor—which the IJ found was consistent with someone who had "either memorized or largely committed to memory a story of what happened to him," and the lack of evidence corroborating Balde's membership in the RPG. J.A. at 10.

II.

Because the BIA adopted the IJ's reasoning without opinion, it is the IJ's decision that we

review. *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003); *see* 8 C.F.R. § 1003.1(e)(4)(ii). We review the IJ's findings of fact, including the adverse credibility finding under the substantial evidence standard. *Sylla v. INS*, 388 F.3d 924, 925-26 (6th Cir. 2004). An IJ's determination on eligibility for asylum must be upheld if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole," *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992); *Koliada v. INS*, 259 F.3d 482, 486 (6th Cir. 2001), and we will defer to the IJ's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary," *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B)); *see Elias-Zacarias*, 502 U.S. at 481, 483–84.

To receive a discretionary grant of asylum, Balde had the burden of establishing that he is a "refugee," a term defined by statute as someone "unable or unwilling to return to . . . [his] country because of [past] persecution or a well-founded fear of [future] persecution on account of [his] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A); *see* 8 C.F.R. § 208.13(b). Even where an alien qualifies as a refugee, the Attorney General may, in his discretion, deny asylum. 8 U.S.C. § 1158(a) and (b). When it comes to proving past persecution or a fear of future persecution, "'[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration.'" *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004) (quoting 8 C.F.R. §§ 208.13(a), 208.16(b)). But "'where it is reasonable to expect corroborating evidence for certain alleged facts pertaining to the specifics of an applicant's claim, such evidence should be provided. . . . The absence of such corroborating evidence can lead

to a finding that an applicant has failed to meet h[is] burden of proof.'" *Id.* (quoting *In re S-M-J-,* 1997 WL 80984, 21 I.&N. Dec. 722, 724–26 (BIA 1997)). If Balde is unable to establish his eligibility for asylum, his claim for withholding of removal will necessarily fail under that provision's more stringent requirements. *See Hassan v. Gonzales*, 403 F.3d 429, 435 (6th Cir. 2005).

Balde argues that the denial of his application for political asylum and withholding of removal should be reversed because the IJ's adverse credibility finding was "not rational, nor [was] it based upon substantial evidence." Balde Br. at 9. In one respect, we have some sympathy for Balde's contention: Several of the IJ's explanations for discounting Balde's credibility do not turn "on issues that go to the heart of the applicant's claim." *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004). The IJ, for example, made much of Balde's "inability to calculate" his age and cited unfavorably Balde's ability to "add and subtract in some circumstances but . . . [not] in others," J.A. at 44. The IJ found that it was "a little disingenuous" for Balde to claim that he made change as a merchant and also to recall firm dates when he lacked the ability to make certain basic mathematical calculations. J.A. at 158. The IJ does not meaningfully explain how these discrepancies do not amount to "irrelevant inconsistenc[ies]" that do not "go to the heart of Balde's claim." *See id*. ("If discrepancies cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.").

The IJ, however, also based at least part of his adverse credibility finding on his observations of Balde's demeanor at the hearing, noting that Balde "ha[d] either memorized or largely committed

to memory a story of what happened to him." J.A. at 46. The IJ also noted that Balde had difficulty answering even simple questions that "knock[ed] him off script," J.A. at 42, and that Balde's "story [came] unglued once the testimony [went] beyond" the information contained in his declaration. J.A. at 46. While an adverse credibility finding based on the petitioner's demeanor is entitled to substantial deference, the determination itself must be supported by specific reasons. *Sylla*, 388 F.3d at 926 (citing *Daneshvar v. Ashcroft*, 355 F.3d 615, 623 n.7 (6th Cir. 2004)). The IJ's determination regarding credibility must be based on "specific, cogent reason[s]" and not on "speculation, conjecture, or an otherwise unsupported personal opinion." *Dia v. Ashcroft*, 353 F.3d 228, 250 (3d Cir. 2003). This determination must be supported by substantial evidence such that a reasonable mind would find adequate. *Id*.

Here, the IJ referenced several reasons in support of his evaluation of Balde's demeanor. For instance, the IJ observed that Balde "adamant[ly] testified that he arrived on March 27, 2000," despite the fact that official Non-Immigrant Information System records showed that someone using the false name adopted by Balde entered the United States on March 23, 2000, and that no one with that name entered the country on March 27, 2000. J.A. at 138–143. While this four-day difference does not go to the heart of Balde's claim of a well-founded fear of persecution, his decision to "stick to his story," J.A. at 46, rather than "admit to a simple mistake," bolsters the IJ's finding regarding Balde's demeanor. That Balde's cousin also testified to the March 27, 2000 arrival date does little to explain Balde's stubborn adherence to his story, nor does it compel the conclusion that Balde's demeanor was not that of a person reciting from a script. The IJ also noted that Balde was unable

to state how old he was when various important events in his life occurred. J.A. at 72 (age when imprisoned), 102 (age at asylum hearing and age in 1998, the year of the elections and the year of his arrest). And while it hardly seems relevant to Balde's credibility that he could not *calculate* how old he had been at these times, J.A. at 102–03, that he could not state how old he was when he was arrested in Guinea, when he entered the United States, or when he testified before the IJ, all support the IJ's conclusion that his testimony "came unglued" when it went "off script." J.A. at 23.

Whether these references by the IJ are sufficient to uphold the IJ's credibility determination, however, is a question we need not decide because Balde has failed to produce evidence sufficient "to compel any reasonable adjudicator" to conclude that he established a well-founded fear of persecution. 8 U.S.C. § 1252(b)(4)(B); *Dorosh*, 398 F.3d at 383. In particular, we find that he failed to "corroborate[] [his] testimony with reasonably expected documentation nor [did he] provide[] an explanation for its absence." *Id.* (even when applicant was found credible, failure to corroborate is sufficient to affirm the IJ's finding).

The IJ noted that the record does not contain any evidence corroborating Balde's membership in the RPG, a fact that is central to Balde's claim of a well-founded fear of persecution because his affiliation with the RPG is the reason he was allegedly persecuted by the Guinean authorities and the reason he claims to fear future persecution. Although he claimed to have received a RPG membership card, he was unable to produce it. The IJ noted that "the Court would've expected corroboration from the RPG in the United States," J.A. at 48, and that such corroboration has been proffered "in many cases" involving RPG applicants. J.A. at 42. Yet, the

IJ pointed out, Balde produced no such corroboration. Nor, the IJ added, did he produce corroboration of his membership from any members of the RPG in Guinea, even though he was able to obtain his passport and identification card from Guinea while in the United States. J.A. at 108; *see Dorosh*, 398 F.3d at 382–83 ("[S]upporting documentation must be provided only if it is of the type that would normally be created or available in the particular country and is accessible to the alien, such as through friends, relatives, or co-workers."). The bare-bones testimony of Balde's cousin also failed to provide any evidence to corroborate Balde's membership in the RPG, because the cousin admitted that he did not know if Balde was a member of any political parties. J.A. at 118.

We conclude, therefore, that without some corroborating evidence, Balde's own testimony does not suffice to compel us to overturn the IJ's adverse credibility finding. *Compare Sylla v. INS*, 388 F.3d 924 (6th Cir. 2004) (adverse credibility finding overturned where applicant produced political party membership card and corroborative letters from his family overseas) with *Dorosh*, 398 F.3d at 384. And having failed to establish his eligibility for asylum, Balde's application for withholding of removal necessarily fails. *See Hassan* 403 F.3d at 435.

Balde next argues, albeit half-heartedly and in the conclusion section of his brief, that the IJ violated his due-process right to a neutral and individualized adjudication of his claims. Because he failed to exhaust this claim before the BIA, we lack jurisdiction to hear it. *See Gill v. Gonzales*, No. 04-3059, U.S. App. LEXIS 6647, at *12 (6th Cir. 2005) (unpublished opinion) (citing decisions from other circuits and agreeing with their conclusion that an appellate court does not have jurisdiction to hear unexhausted due process claims involving procedural errors correctable by the

BIA).

Likewise, Balde's claim for protection under the Convention Against Torture is dismissed for lack of jurisdiction, as it was not exhausted in the administrative proceedings below. *Perkovic v. INS*, 33 F.3d 615, 619 (6th Cir. 1994) (failure to exhaust administrative remedies results in lack of jurisdiction); *see* J.A. at 4 (BIA's denial of Balde's motion to accept an untimely filed brief); 25–29 (Notice of Appeal).

## III.

For these reasons, we deny Balde's petition for review.