**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0790n.06

No. 09-3232

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 28, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| LIMING ZHENG, | ) | ON PETITION FOR REVIEW |
| | ) | OF AN ORDER OF THE |
| *Petitioner-Appellant*, | ) | BOARD OF IMMIGRATION |
| | ) | APPEALS |
| v. | ) | |
| | ) | **O P I N I O N** |
| ERIC H. HOLDER, JR., | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

BEFORE:     MARTIN, COLE, and CLAY, Circuit Judges.

**COLE, Circuit Judge.**  Liming Zheng petitions this Court for review of a decision of the

Board of Immigration Appeals ("BIA") which dismissed Zheng's appeal from an order of the

Immigration Judge ("IJ") denying Zheng's applications for asylum and withholding of removal and

for relief under the Convention Against Torture.  The BIA's decision also denied Zheng's motion

to remand her case to the IJ based on ineffective assistance of counsel.  For the following reasons,

we **VACATE** the BIA's opinion and **REMAND** to the BIA for consideration of Zheng's motion to

reopen her claim based on ineffective assistance of counsel.

## I.  BACKGROUND

Zheng, a native of China, entered the United States without inspection in November 1996

and filed an application for asylum and withholding of removal with the former Immigration and

Naturalization Service ("INS") in March 1997.

At her asylum hearing, Zheng maintained that she married Yong Zhong Zheng in October 1990 and that she became pregnant in May 1991; she then went into hiding to avoid family planning officials, who ultimately learned of her pregnancy, and took her to a hospital where they forced her to undergo an abortion. Family planning officials additionally requested that she have an intrauterine device ("IUD") implanted to prevent pregnancy, but Zheng refused. When Zheng's husband learned of the abortion, he allegedly had a physical confrontation with family planning officials. Zheng's husband left China in November 1991 and arrived in the United States in February 1992.

In May 1997, Zheng's asylum application was referred to an IJ for adjudication. On December 17, 1998, after holding a hearing, the IJ entered an oral decision denying Zheng's request for asylum and related remedies. The BIA affirmed the IJ's decision without opinion on August 13, 2002. After filing a petition for review with the United States Court of Appeals for the Second Circuit, Zheng and the government entered into a joint stipulation order to remand Zheng's case to the BIA to develop the record further. On remand, an IJ ordered Zheng removed in absentia when she failed to appear before the immigration court on October 21, 2005. Zheng moved to reopen her case, alleging that she did not receive notice of the hearing date; her motion was granted.

Venue changed to Cleveland, Ohio, and Zheng appeared before the IJ for rehearing on May 29, 2007, where the IJ entered an oral decision denying Zheng's request for asylum and related remedies. The IJ found that Zheng was not credible and that she failed to produce corroboration from her family, particularly her husband who was present at the hearing. Zheng appealed to the BIA and subsequently filed a motion to remand alleging ineffective assistance of counsel. On

February 11, 2009, the BIA dismissed Zheng's appeal and denied her motion to remand. This petition for review followed.

## II. ANALYSIS

### A.      Adverse Credibility Finding

Zheng contends that the BIA erred in upholding the IJ's adverse credibility finding because: (1) the inconsistencies on which the IJ relied are legally insufficient to support the finding; (2) the IJ's negative assessment of Zheng's demeanor was not supported by substantial evidence; and (3) it was improper for the IJ to base an adverse credibility finding on a lack of corroborating evidence.

The IJ's adverse credibility determination is a "conclusive" finding of fact unless "any reasonable adjudicator would be compelled to conclude to the contrary." *Hassan v. Gonzales*, 403 F.3d 429, 434 (6th Cir. 2005) (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)). As the BIA adopted the IJ's decision and added its own reasoning, this Court reviews directly the IJ's decision and considers the additional comments of the BIA together as the "final order." *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007).

#### *1.      Inconsistent Statements*

The IJ relied on two evidentiary inconsistences to find that Zheng's testimony was not credible: the shifting date of her forced abortion (at her hearing in 1998, Zheng testified that the abortion occurred in mid-August 1991, while at the hearing in 2007, Zheng stated that the abortion took place in late September or October 1991), and the timing and nature of her husband's altercation with family-planning officials.

As to the timing of her abortion, at the 2007 hearing Zheng testified that she became pregnant in May 1991, went into hiding in August of that year and was forced to have an abortion forty days thereafter. On cross-examination, Zheng agreed that forty days after August was September or October, though, as Zheng now argues, forty days after the *beginning* of August is early September, not October. Even so, this fact does not mean that her testimony in 2007 accords with her statements in 1998. Zheng did not specify at the 2007 hearing when in May she became pregnant and the other dates in her timeline follow from the discovery of her pregnancy. Because the IJ could reasonably interpret Zheng's testimony to state that she discovered her pregnancy at the end of May, concluding that Zheng testified to having undergone an abortion in early October is not so outlandish a finding that any reasonable adjudicator would be compelled to reject it. The interpretation is particularly reasonable because Zheng agreed to the date on cross-examination. Zheng's later clarification that the abortion occurred in late August or early September, a date closer to the one to which she testified at her 1998 hearing, does not compel reversal either. The IJ could reasonably discount the correction because it occurred after Zheng had been impeached by her prior testimony.

With respect to the IJ's finding that the evidence of an altercation between Zheng's husband and Chinese family-planning officials (variously, over the insertion of an IUD and Zheng's forced abortion) was inconsistent, Zheng contends the IJ improperly relied on these inconsistencies, as other testimony in the record accounted for some of them. And the inconsistences are irrelevant in any

event, Zheng submits, because her husband's actions do not go "to the heart of [her] claim." *Kaba v. Mukasey*, 546 F.3d 741, 749 (6th Cir. 2008).[1]

The latter argument is inapposite. The purported altercation between Zheng's husband and Chinese family planning officials, if true, speaks directly to Zheng's claim. Zheng alleges that she was persecuted by Chinese family planning officials; evidence that her husband had an altercation with those very officials over the subject of Zheng's forced abortion, or the insertion of an IUD device, goes to the heart of her claim. *Id.*

The inconsistencies respecting this altercation properly supported the IJ's adverse credibility finding. Zheng testified that she failed to mention the argument that her husband had with family planning officials immediately after her forced abortion at her first asylum hearing because her attorney asked her not to mention it. While this explanation may or may not be true, and may or may not be sufficient to overcome the inconsistency, this Court may only reverse an IJ's factual finding if "any reasonable adjudicator would be compelled to" view the matter differently. *Hassan*, 403 F.3d at 434. Zheng has not met this high bar.

### 2. Demeanor

Zheng next argues that the IJ erred by basing his adverse credibility finding on an assessment of Zheng's demeanor and by failing to support that finding with sufficient reasons. "An adverse

---

[1] The REAL ID Act of 2005 dictates that credibility determinations can be based on the totality of the circumstances. *El-Moussa v. Holder*, 569 F.3d 250, 256 (6th Cir. 2009). But this standard does not apply to Zheng's claim because it was filed before May 11, 2005. *See Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006).

credibility finding based on the petitioner's demeanor is entitled to substantial deference, [where] . . . supported by specific reasons." *Balde v. Gonzales*, 157 F. App'x 864, 868 (6th Cir. Dec. 8, 2005) (citing *Sylla v. INS*, 388 F.3d 924, 926 (6th Cir. 2004)).

The IJ found that Zheng's demeanor during her testimony was frequently evasive and non-responsive; he applied this characterization universally to Zheng's testimony in response to questions from her own attorney, the Attorney General, and the immigration court. The IJ specified that he found Zheng particularly evasive when questioned about why she feared returning to China, and about why her husband did not testify on her behalf. Such reasons are specific enough to be given substantial deference, and a review of Zheng's testimony confirms that the IJ's demeanor finding was reasonable. *Hassan*, 403 F.3d at 434. While Zheng offers other ways to read the record, characterizing her own testimony as "forthcoming," (Pet'r's Br. 12), and explaining that the instances that the IJ said were evasive were the result of confusion, Zheng has failed to show that this favorable interpretation is *compelled* by the testimony. *Hassan*, 403 F.3d at 434. We may not reverse the IJ's interpretation of the facts "simply because we would have decided the matter differently," as Zheng impliedly asks us to do. *Zhao v. Holder*, 569 F.3d 238, 247 (6th Cir. 2009) (quoting *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)).

Zheng attempts again to avoid this deferential standard of review by claiming that the IJ specified that Zheng was evasive in responding to a line of questioning that does not go to the heart of her claim; she additionally urges that the IJ's focus on testimony probative of her fear of future persecution cannot support an adverse credibility finding because she had established past persecution and it was therefore the government's burden to rebut the presumption that her fear of

future persecution was well founded. These arguments are poorly taken. When Zheng testified as to her fear of future persecution, the IJ had yet to decide whether she established past persecution, and ultimately found that she had failed to do so. Zheng's fear of future persecution, then, was relevant to her claim because asylum may be granted where the petitioner establishes "persecution *or* a well-founded fear of persecution." 8 U.S.C. § 1101(a)(42)(A) (emphasis added). Testimony related to fear of future persecution is thus central to the adjudication of Zheng's claim and may support an adverse credibility determination.

### 3. Corroboration

Finally, citing case law from the Second and Third Circuits, Zheng contends that the IJ erred in basing his adverse credibility finding on the absence of corroborating evidence. (Pet'r's Br. 14) (citing *Chen v. Gonzales*, 434 F.3d 212, 221 (3d Cir. 2005); *Diallo v. INS*, 232 F.3d 279 (2d Cir. 2000)). Zheng misconstrues these precedents. *Diallo* opined that "the presence or absence of corroboration *may* . . . be considered in determining credibility," but cannot be the only reason supporting an adverse credibility determination. *Id*. at 287. *Chen* adopts the same rule in different form: "A failure of proof is not a proper ground *per se* for an adverse credibility determination." *Chen*, 434 F.3d at 221 (emphasis added) (citing *Abdulai v. Ashcroft*, 239 F.3d 542, 551 n.6 (3d Cir. 2001)). The law in this circuit is no different. *See Ikharo v. Holder*, 614 F.3d 622, 634 (6th Cir. 2010) ("An IJ is permitted to rely on the failure of an alien to present corroborating evidence when making a credibility determination and where there are also inconsistencies in the alien's testimony."). Even if it were the rule that the IJ could never mix corroboration and credibility, Zheng has failed to specify where in the IJ's decision this purported error occurred. And, in any case the

IJ did not mix the two findings, he explicitly separated them. (*See* Admin. R. ("R"), at 98 (stating that Zheng's credibility was more crucial to her case because she had presented no corroborating evidence); *id.* at 101 (making separate credibility and corroboration findings)).

Though an asylum applicant may establish eligibility based solely on the strength of her testimony, where corroborating evidence is reasonably available and accessible, "[t]he absence of such . . . evidence can lead to a finding that an applicant has failed to meet her burden of proof." *Vasha v. Gonzales*, 410 F.3d 863, 871 n.3 (6th Cir. 2010) (Adams, J., concurring) (citing *Dorosh v. Ashcroft*, 398 F.3d 379, 382 (6th Cir. 2004)). The corroboration that the IJ found wanting was reasonably available to Zheng. Zheng's husband was, by her own account, just outside the courtroom during her asylum hearing, and she was in frequent telephone contact with her parents in China; all three of these family members allegedly knew of her persecution. The IJ reasonably relied on the absence of corroborating evidence to deny Zheng's claim.

We find, therefore, that the BIA committed no error in upholding the IJ's denial of Zheng's claim for asylum, withholding of removal, or relief under the Convention Against Torture.

## B. Ineffective Assistance of Counsel

The BIA denied Zheng's request for remand to the IJ for consideration of a claim of ineffective assistance of counsel because she did not "submit[] or *identif[y]* additional evidence demonstrating that further hearings are warranted." (R. at 3 (emphasis added) (citing 8 C.F.R. § 1003.2(c) ("A motion to reopen proceedings shall state the new facts that will be proven at a hearing to be held if the motion is granted and shall be supported by affidavits or other evidentiary

material."))).  But the record belies this finding.  Zheng provided the BIA with a signed affidavit in

support of her motion which states, in pertinent part, as follows:

> My sister-in-law ZHENG, XIU YAN was a witness to my persecution in China and
> so were my husband and my father-in-law.  Attorney LIN never even asked me if I
> had any witnesses to present in my case.  My sister-in-law is a lawful permanent
> resident and could have appeared in court at my hearing.
>
> . . . .
>
> SHEN who drafted the brief in my appeal to the BIA.  This attorney did not inform
> me that I had needed to submit documents or that my husband was required to testify
> at the individual hearing as indicated in the BIA's decision, the Immigration Judges'
> two decisions.  This attorney did not explain to me that I could not submit new
> evidentiary documents in the appeal of my case.  They did not inform me of the
> option to pursue a motion to reopen based on what my prior counsel TAO LIN had
> failed to do.

(R. at 13 ¶¶ 12, 17.)  These paragraphs identify testimony (of her sister, husband, and father-in-law)

that, if found credible, would cure a core deficiency in her asylum claim, the lack of corroboration.

The IJ denied Zheng's claim in substantial part because Zheng's husband neither submitted an

affidavit in support of her claim, nor testified at the hearing, despite being "no more than 15 or 20

feet from the courtroom," and because of the "striking" absence of evidence corroborating her

testimony.  (R. at 99.)

We review the BIA's denial of a motion to remand for abuse of discretion.  *See Ahmed v.*

*Mukasey*, 519 F.3d 579, 585 (6th Cir. 2008).  The BIA abuses its discretion where it makes a

decision "without a rational explanation, inexplicably depart[s] from established policies, or rest[s]

on an impermissible basis such as invidious discrimination against a particular race or group."

*Haddad v. Gonzales*, 437 F.3d 515, 517 (6th Cir. 2006) (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)).[2]

We cannot determine from the BIA's opinion whether it believed that the quoted paragraphs from Zheng's affidavit *insufficiently* identified "additional evidence demonstrating that further hearings are warranted," (R. at 3) or whether the BIA erroneously believed that Zheng had not pointed to any evidence at all in support of her motion for remand—a straightforward failure to comply "with the statutory and regulatory requirements for reopening." (*Id*.) This ambiguity requires us to remand Zheng's motion to the BIA for clarification. *See, e.g.*, *Bi Xia Qu v. Holder*, 618 F.3d 602, 609 (6th Cir. 2010) ("When the BIA does not fully consider an issue . . . a reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed . . . the proper course, except in rare circumstances, is to remand to the [BIA] for additional investigation or explanation.") (citations and internal quotation marks omitted). Even were we to assume that the BIA had noticed those paragraphs and decided that they were insufficient to demonstrate that further hearings were warranted, we cannot know on this record *why* the BIA believed them insufficient or evaluate whether those reasons were adequate under the very deferential standard we apply to petitions for review. As we recently opined, the deference that we show to the BIA is substantial, but it is not without limits.

> Deference . . . does not require upholding a Board decision without regard to whether there is a reasoned basis for it, and it does not require us to envision a rational explanation ourselves. Board decisions are upheld when the agency has exercised

---

[2] We review the BIA's denial of a motion to remand using the criteria that apply to a motion to reopen. *See Bi Feng Liu v. Holder*, 560 F.3d 485, 489 n.4 (6th Cir. 2009).

reasoned discretion, not as a matter of grace, and the Board must offer sufficient reasons for allowing us to distinguish between the two.

*Berhane v. Holder*, 606 F.3d 819, 825 (6th Cir. 2010).

To be sure, the BIA need not "list every possible positive and negative factor in its decision," *Scorteanu v. INS*, 339 F.3d 407, 412 (6th Cir. 2003) (quoting *Rodriguez-Rivera v. INS*, 993 F.2d 169, 170-71 (8th Cir. 1993)); it *is*, however, obligated to "announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted," *id*. (quoting *Osuchukwu v. INS*, 744 F.2d 1136, 1142-43 (5th Cir. 1984)).  Our review is stymied here by the ambiguous and conclusory language in the BIA's order, so we vacate that order and remand to the BIA to reconsider the sufficiency of Zheng's motion to reopen.  *See N'Diom v. Gonzales*, 442 F.3d 494, 499 (6th Cir. 2006) (Martin, J., concurring, Gilman, J., dissenting) (remanding where the BIA did "not sufficiently articulate its reasoning" for upholding IJ's asylum denial).

Finally, although we review de novo Zheng's claim that her counsel's ineffective assistance amounted to a denial of due process of law under the Fifth Amendment to the U.S. Constitution,[3]

---

[3] In *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), the BIA declined to hold that ineffective assistance of counsel in immigration proceedings constituted a constitutional violation. *See Lozada*, 19 I. & N. Dec. at 638 ("Any right a respondent in deportation proceedings may have to counsel is grounded in the fifth amendment guarantee of due process.").  In *Matter of Compean* (*Compean I*), 24 I. & N. Dec. 710 (BIA 2009) the attorney general concluded that the "Constitution does not confer a constitutional right to effective assistance of counsel in removal proceedings" citing authority from the Fourth, Fifth, Seventh and Eighth Circuits in support.  *Compean I*, 24 I. & N. Dec. at 713 (collecting cases).  This circuit has thus far held to its prior ruling that ineffective assistance of counsel may rise to the level of a constitutional violation in the removal context.  *See Denko v. INS*, 351 F.3d 717, 724 (6th Cir. 2003).  *Matter of Compean* (*Compean II*), 25 I. & N. Dec. 1 (BIA 2009) overruled *Compean I*'s holding that there was no constitutional right to effective assistance of counsel in immigration proceedings, but declined to opine further on the issue.

*see Hassan v. Holder*, 604 F.3d 915, 923 (6th Cir. 2010), in light of our decision to remand the case to the BIA, we reserve judgment on this issue until the BIA has decided anew whether Zheng will be given an opportunity further to develop the record below.

## V.  CONCLUSION

We **VACATE** the BIA's opinion and **REMAND** this case to the BIA for further proceedings consistent with this opinion.