PER CURIAM.
Bijou Sene petitions this court for review of an order of the Board of Immigration Appeals (BIA) dismissing her appeal from the denial of her application for withholding of removal.
*464 Sene is a native of Mauritania and a citizen of both Mauritania and Senegal. On April 25, 2002, Sene filed an application for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), asserting that her family was mistreated and tortured by the authorities in Mauritania because of their race and membership in a particular social group. In 2005, the Department of Homeland Security (DHS) served Sene with a notice to appear in removal proceedings, alleging that she was admitted to the United States on December 20, 2000, without a valid entry or travel document and charging that she was subject to removal as an alien who was not in possession of a valid entry or travel document at the time of entry. See 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1227(a)(1)(A). Appearing before an immigration judge (IJ), Sene admitted the factual allegations set forth in the notice to appear and conceded removability as charged.
At the merits hearing, Sene testified that her parents were born in Senegal but were living in Mauritania when she was born in 1980. When she was five or six years old, Sene’s father took her to a village in Mauritania, where she was subjected to female genital mutilation (FGM). Sene further testified that, when she was ten years old, Mauritanian military personnel came to her house, loaded her family onto military trucks, and took them to military barracks. Sene was detained for twenty-five days, during which time she was questioned, beaten, and forced to work. One night, three soldiers undressed her, tied her legs and hands, and raped her. The next morning, Sene was forced to cross the river into Senegal, where she told Red Cross personnel about what happened to her. After staying in a hospital for four days, Sene and her mother went to a refugee camp. They eventually moved to Dakar, where Sene found a job as a' babysitter and maid. Sene testified that she lived in Senegal for eleven years with no problems and that she left for the United States in 2001 for a job opportunity. Sene married her husband in 2004, and they had a daughter in 2005. Sene testified that she did not have any fear of returning to Senegal until she received a letter from her husband’s father or grandfather, stating that he hoped that when Sene’s daughter turned two, “you will be sending her to us, so we can have her circumcised, as required by the African tradition.” (AR 526-27). Sene testified that she wanted to protect her daughter and did not want her daughter to experience what she had experienced, asserting her fear that her husband’s family might take her daughter and subject her to FGM.
At the conclusion of the hearing, the IJ denied Sene’s applications for relief and ordered her removal to Senegal or, in the alternative, Mauritania. The IJ denied Sene’s asylum application as untimely to the extent that it was based on her own alleged persecution. The IJ found that Sene’s asylum application was timely filed with respect to her fear that her daughter might be subject to FGM. The IJ determined that, while Sene’s experiences in Mauritania constituted serious persecution, evidence submitted by the DHS showed changed conditions in Mauritania, rebutting the presumption that she would face future persecution there on account of her race. Because FGM is a one-time harm, the IJ stated, Sene no longer had a well-founded fear of persecution on that ground. The IJ found that Sene had not suffered past persecution in Senegal and that her fear that her daughter might be subject to FGM in Senegal was not objectively reasonable. The IJ further determined that the record did not show a risk of torture to Sene in either Senegal or Mauritania.
*465 On appeal, the BIA agreed that Sene’s asylum application as it related to her own alleged persecution was untimely and, on that basis, denied her motion to remand to pursue a claim for humanitarian asylum. The BIA affirmed the IJ’s denial of Sene’s applications for asylum and withholding of removal based on her claimed fear that her daughter would be subject to FGM in Senegal. The BIA went on to note that, in denying Sene’s claims based on her own FGM, the IJ relied on a decision that had since been vacated in relevant part by the Attorney General. See In re A-T-, 24 I. & N. Dec. 296 (BIA 2007), vacated, 24 I. & N. Dec. 617 (Att’y Gen. 2008). The BIA also took administrative notice of a recent Department of State Country Report on Human Rights Practices indicating that “a military coup occurred in Mauritania on August 6, 2008, followed by a deterioration in the human rights situation.” (AR 266). Accordingly, the BIA remanded Sene’s case for reconsideration of her applications for withholding of removal arid CAT protection.
On remand, Sene submitted additional documents and provided further testimony regarding the ongoing effects of her FGM. In a written decision, the IJ denied Sene’s applications for withholding of removal and CAT protection and oi’dered her removal to Senegal. The IJ found that Sene’s experiences in Mauritania rose to the level of serious persecution but that the DHS met its burden to rebut the presumption that she would be persecuted if she returned to Mauritania. As for Senegal, the IJ found that Sene failed to demonstrate past persecution in light of her testimony that she lived there without harm for approximately eleven years and that she failed to meet her burden of demonstrating that her life or freedom would be threatened in the future there. The IJ further determined that Sene failed to demonstrate that she would be subject to torture if she were removed to Mauritania or Senegal.
Sene appealed the IJ’s decision. Given that the IJ ordered Sene’s removal to Senegal only, the BIA declined to address Sene’s claims with respect to Mauritania. With respect to Senegal, the BIA affirmed the IJ’s findings that Sene failed to establish eligibility for withholding of removal or CAT protection. This timely petition for review followed.
Where, as here, “the BIA reviews the immigration judge’s decision and issues a separate opinion, rather than summarily affirming the immigration judge’s decision, we review the BIA’s decision as the final agency determination.” Khalili v. Holder, 567 F.3d 429, 435 (6th Cir. 2009). We review the agency’s factual findings for substantial evidence, reversing only if “any reasonable adjudicator would be compelled to conclude to the contrary.” 8 U.S.C. § 1252(b)(4)(B); see Khalili, 557 F.3d at 435.
Sene contends that her FGM constitutes a permanent and continuing act of persecution, entitling her to withholding of removal. By failing to address her other grounds for relief, Sene has waived those issues. See Cruz-Samayoa v. Holder, 607 F.3d 1145, 1155 (6th Cir. 2010). Withholding of removal is mandatory if the alien establishes that her “life or freedom would be threatened in [the proposed country of removal] because of the alien’s race, religion, nationality, membership in a particular social group, or political opinion.” 8 U.S.C. § 1231(b)(3)(A); see Khalili, 557 F.3d at 435. If an applicant for -withholding of removal “is determined to have suffered past persecution in the proposed country of removal on account of’ a protected ground, “it shall be presumed that the applicant’s life or freedom would be threatened in the future in the country of removal on the basis of the original claim.” 8 *466 C.F.R. § 1208.16(b)(l)(i). In the absence of such a presumption, the alien “must establish a ‘clear probability of persecution,’ meaning that ‘it is more likely than not that the alien would be subject to persecution.’” Al-Ghorbani v. Holder, 585 F.3d 980, 993-94 (6th Cir. 2009) (quoting INS v. Stevic, 467 U.S. 407, 413, 424, 104 S.Ct. 2489, 81 L.Ed.2d 321 (1984)).
Sene relies on Mohammed v. Gonzales, 400 F.3d 785 (9th Cir. 2005), in which the Ninth Circuit held that FGM is “a ‘permanent and continuing’ act of persecution” and that “the presumption of well-founded fear in such cases cannot be rebutted.” Id. at 801. The Ninth Circuit stated that “persecution in the form of female genital mutilation is similar to forced sterilization, and like that other persecutory technique, must be considered a continuing harm that renders a petitioner eligible for asylum, without more.” Id. at 799. The Mohammed case is inapposite. Here, while Sene was subjected to FGM and other forms of persecution in Mauritania, she suffered no harm in Senegal, the proposed country of removal. Because Sene did not suffer past persecution in Senegal, no presumption arose in her favor for the DHS to rebut. Furthermore, this court has questioned the soundness of the Mohammed decision’s analogy to forced sterilization, pointing out that “Congress specifically defined the term ‘refugee’ to include victims of forced sterilization” and that “[n]o equivalent ‘shortcut’ to refugee status applies to those subjected to FGM.” Diallo v. Mukasey, 268 Fed.Appx. 373, 380 (6th Cir. 2008).
Substantial evidence supports the BIA’s determination that Sene failed to show that it is more likely than not that she would be subject to persecution in Senegal, “where the country reports indicate that FGM is a criminal offense that is not commonly committed against adult women and the record likewise does not support her fear of any other form of harm.” (AR 5). See Dieng v. Holder, 698 F.3d 866, 873-74 (6th Cir. 2012) (holding that a fear of FGM of an adult woman who “has effectively ‘aged out’ of the threat of FGM in Senegal” did not support a claim for asylum, let alone withholding of removal). Accordingly, we DENY Sene’s petition for review.