**NOT RECOMMENDED FOR PUBLICATION**
File Name: 18a0111n.06

**No. 17-3774**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Mar 02, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| NENE WANE; AMADOU LY, | ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | ON PETITION FOR REVIEW |
| v. | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| JEFFERSON B. SESSIONS, III, Attorney General, | ) | APPEALS |
| | ) | |
| Respondent. | ) | OPINION |
| | ) | |
| | ) | |

**BEFORE:** **COOK, McKEAGUE, and STRANCH, Circuit Judges.**

**JANE B. STRANCH, Circuit Judge.** Nene Wane and Amadou Ly petition for review of a decision of the Board of Immigration Appeals (BIA) denying their applications for asylum, withholding of removal under the Immigration and Nationality Act (INA), and withholding pursuant to the Convention Against Torture (CAT). Because the decision is supported by substantial evidence, we **DENY** the petition.

## I.        BACKGROUND

Petitioners Nene Wane and Amadou Ly are a married couple from Mauritania. Ly was admitted to the United States in August 2001; he applied for asylum in April 2002. Wane was admitted to the United States in September 2003. She attempted to apply for asylum in July

2004, but her application was twice rejected before she successfully filed in September 2004.[1]

Wane listed Ly as a derivative beneficiary in her asylum application. Wane and Ly were served with Notices to Appear (NTAs) in immigration court in November 2004. The Government charged that Wane and Ly were removable because they lacked valid entry documents when they were admitted to the United States. The Petitioners, through counsel, admitted the allegations in the NTAs and conceded the charges against them. The immigration judge (IJ) designated Mauritania as the country of removal for both Wane and Ly. The Petitioners sought three forms of relief: asylum, withholding of removal under the INA, and withholding of removal pursuant to CAT. Wane and Ly's cases were consolidated, and Ly was treated primarily as a family derivative to Wane's application.

The IJ heard testimony from the Petitioners over the course of three hearing dates. They testified that Ly had been arrested, detained, and subjected to physical and sexual abuse because of his political involvement. They also testified that after Ly left Mauritania for the United States, Wane became politically involved herself and was arrested, detained, and physically and sexually assaulted as a result. Wane further testified that she had been subjected to female genital mutilation (FGM) when she was a child and that she feared her children would be forced to undergo FGM if Wane and Ly were deported.[2] The Petitioners submitted documentary evidence in support of their claims. These documents included materials relevant to the Petitioners' specific allegations, such as reports supposedly issued when they were arrested and

---

[1] Though Wane's date of successful filing was just over the one-year deadline to apply for asylum, her initial attempts were within the year, and the immigration judge (IJ) treated her application as timely filed.

[2] Before the IJ, the Petitioners advanced a theory of relief based upon the fear that their daughters would be forced to undergo FGM if the family was deported, relying on *Abay v. Ashcroft*, 368 F.3d 634 (6th Cir. 2004). While this might be a viable claim, *compare Abay*, 368 F.3d at 640–42, *and Sene v. U.S. Att'y Gen.*, 679 F. App'x 463, 467 (6th Cir. 2017) (Stranch, J., concurring), *with Dieng v. Holder*, 698 F.3d 866, 876–77 (6th Cir. 2012), the Petitioners do not make this argument on appeal and have therefore waived it. *See Cruz-Samayoa v. Holder*, 607 F.3d 1145, 1155 (6th Cir. 2010).

detained; affidavits from Wane's co-arrestees; a doctor's note stating that Wane had undergone FGM; documents relating to their identities and biographical information, such as birth and marriage certificates and entry documents; as well as multiple reports and articles documenting the country conditions in Mauritania.

In September 2016, the IJ issued a written decision denying the Petitioners' applications for relief and ordering them removed to Mauritania. The IJ found that the Petitioners "were not credible" and gave their testimony little weight, and determined that the arrest and detention reports were highly suspect and fraudulent, and so gave them no weight. The IJ further discounted the remaining case-specific corroborating evidence, with the exception of Wane's doctor's note, based on the Petitioners' lack of credibility and the determination that the arrest and detention reports were fraudulent. The Petitioners filed notices of appeal, indicating that they intended to file separate briefing before the BIA. However, their briefs were never filed, and the BIA relied exclusively on the Petitioners' notices of appeal in its decision dismissing their appeal.

The Petitioners now seek review in this court, arguing that the IJ and BIA erred in concluding that (1) the Petitioners lacked credibility; (2) Wane failed to demonstrate past persecution when she suffered FGM as a child; (3) the Petitioners did not qualify for withholding of removal; and (4) the Petitioners did not qualify for withholding pursuant to CAT. The Government argues that the Petitioners failed to exhaust their claims before the BIA and that we therefore lack jurisdiction. In the alternative, the Government asserts that the IJ's credibility finding is supported by substantial evidence and that the Petitioners have failed to demonstrate that the record evidence compels a contrary finding.

## II.    ANALYSIS

### A.    Jurisdiction

As an initial matter, we must determine whether we have jurisdiction to entertain Wane and Ly's petition for review.  The Government argues that the Petitioners failed to exhaust their claims before the BIA, depriving this court of jurisdiction.

We have jurisdiction to review a final order of removal only if the petitioner "has exhausted all administrative remedies available to [him] as of right."  8 U.S.C. § 1252(d)(1). This requirement is jurisdictional, "and thus where a petitioner has failed to exhaust his administrative remedies, a federal court is without jurisdiction to consider his petition for review."  *Hassan v. Gonzales*, 403 F.3d 429, 432 (6th Cir. 2005) (citation and internal quotation marks omitted).

The exhaustion analysis turns in part on the nature of the BIA decision.  *Id.* at 433.  The BIA may summarily dismiss an appeal, or a portion of an appeal, where a party "fails to specify the reasons for the appeal."  *Id.* (quoting 8 C.F.R. § 1003.1(d)(2)(i)(A)).  This "specificity requirement" can be satisfied through either the notice of appeal itself or by filing a separate brief.  *Id.*  Petitioners are therefore not required to file separate briefing to meet the specificity requirement, but in certain circumstances, the BIA may choose to summarily dismiss an appeal where a petitioner has failed to file a brief after indicating that she would.  *See, e.g.*, *Haddad v. INS*, 69 F. App'x 280, 281–82 (6th Cir. 2003) (order).

"Where the BIA has dismissed an appeal for failure to satisfy the specificity requirement, administrative remedies are unexhausted and a court has no jurisdiction to review the IJ's decision."  *Hassan*, 403 F.3d at 433.  However, "where the BIA could have summarily dismissed for failure to raise an issue (or raise with specificity) but nonetheless reached the merits or

affirmed the merits of the immigration judge's decision, the exhaustion requirement is waived and the appellate court has jurisdiction." *Khalili v. Holder*, 557 F.3d 429, 433 (6th Cir. 2009). This is so where the BIA summarily affirms the IJ's decision without further analysis. *Id.* at 434 (citing *Hassan*, 403 F.3d at 433). In *Hassan*, we concluded that by affirming without opinion instead of summarily dismissing the case, the BIA necessarily found that the petitioner had satisfied the specificity requirement. 403 F.3d at 433. The same rule applies—and is arguably "even more appropriate"—where "the BIA has sua sponte reached the merits of an issue." *Khalili*, 557 F.3d at 435 ("[W]e follow the majority of circuit courts in finding appellate jurisdiction to review issues raised sua sponte by the BIA. In such cases, the BIA's action waives that issue's exhaustion requirements.").

In short, a petitioner is not required to file a brief to satisfy the specificity requirement; a notice of appeal can suffice. *Hassan*, 403 F.3d at 433. And even where the petitioner has failed to meet the specificity requirement, the BIA waives the exhaustion requirement by summarily affirming the IJ's decision or by reaching the merits of the issues. *See Khalili*, 557 F.3d at 433–45; *Hassan*, 403 F.3d at 433.

Wane and Ly filed notices of appeal challenging the IJ's denial of their asylum, withholding, and CAT claims. The notices, prepared by counsel, indicated that both Petitioners intended to file written briefs, but neither Wane nor Ly actually filed briefs in their BIA appeal, apparently because their attorney moved to withdraw on the day the briefs were due. The BIA was aware of this, but declined to dismiss the Petitioners' appeal on that basis.

In their notices, the Petitioners raised four specific grounds for appeal, arguing that the IJ incorrectly concluded that (1) Wane and Ly were not credible witnesses; (2) they did not suffer past persecution on account of a protected ground; (3) they did not timely file an asylum

application;[3] and (4) there were changed country conditions negating their fear of returning to Mauritania.

The BIA issued a two-page decision dismissing the Petitioners' appeal. It found that Wane and Ly did not dispute the IJ's denial of their CAT claim and therefore deemed the issue waived. It disposed of the Petitioners' argument regarding changed country conditions by noting that the IJ "did not make any findings in her written decision pertaining to changed country conditions." The BIA focused primarily on the Petitioners' challenge to the IJ's credibility determinations, as they formed the basis for the IJ's denial of the Petitioners' claims.

The BIA summarized several of the IJ's factual findings upon which the adverse credibility determinations were based. The BIA noted that the Petitioners challenged the IJ's adverse credibility determination but did not specifically dispute the particular factual findings underlying that determination. The BIA then concluded that there was "no reason to disturb the Immigration Judge's adverse credibility determinations as predicated on inconsistencies in the record going to the 'heart' of their claims and that provide specific, cogent reasons upon which to base an adverse credibility finding." The BIA also stated that "[n]o other arguments made by the [Petitioners] on appeal would cause us to otherwise disturb the Immigration Judge's decision in this case."

Thus, the BIA did not summarily dismiss the Petitioners' appeal and instead briefly addressed the grounds of appeal raised by the Petitioners in their notices of appeal. Moreover, the BIA's finding that the CAT claim was waived indicates that it did not consider the asylum or withholding of removal claims to be waived.

---

[3] There is no indication that the IJ found that either asylum application was filed in an untimely manner, and the Petitioners do not raise this argument before this court.

Because the Petitioners outlined their grounds of appeal in their notices of appeal, and the BIA considered these claims, we have jurisdiction to review them. *See Khalili*, 557 F.3d at 433–35; *Hassan*, 403 F.3d at 433; *see also Linares v. Holder*, 578 F. App'x 575, 577–78 (6th Cir. 2014).

### B.     Standard and Scope of Review

Where the BIA reviews the IJ's decision and issues a separate opinion, rather than summarily affirming the decision of the IJ, we review the BIA's decision as the final agency determination. *Khalili*, 557 F.3d at 435. To the extent that the BIA adopts the IJ's reasoning, we also review the IJ's decision. *Id.*; *see also Abdulahad v. Holder*, 581 F.3d 290, 294 (6th Cir. 2009) ("Where, as here, the Board adopts and affirms the immigration judge's opinion, but writes its own opinion explaining the reasons for its decision, we review both opinions."); *Marouf v. Lynch*, 811 F.3d 174, 181 (6th Cir. 2016) ("[T]he conclusions of the IJ that were adopted by the Board . . . are the proper foci of review.").

We review questions of law de novo, but give "substantial deference . . . to the BIA's interpretation of the INA and accompanying regulations." *Khalili*, 557 F.3d at 435. Factual findings, including adverse credibility determinations, are reviewed under the substantial evidence standard. *See Sylla v. INS*, 388 F.3d 924, 925 (6th Cir. 2004). Under this deferential standard, "[a] reviewing court should not reverse 'simply because it is convinced that it would have decided the case differently.'" *Id.* (quoting *Klawitter v. INS*, 970 F.2d 149, 151–52 (6th Cir. 1992)). Rather, administrative findings of fact "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## C. Adverse Credibility Determinations

We review adverse credibility determinations, like other findings of fact, under the deferential substantial evidence standard and do not reverse unless the evidence compels a conclusion to the contrary. *Sylla*, 388 F.3d at 925. Nevertheless, an adverse credibility determination "must be supported by specific reasons." *Id.* at 926. And where the petitioner applied for asylum before the adoption of the REAL ID Act of 2005, the finding "must be based on issues that go to the heart of the applicant's claim" and not on "an irrelevant inconsistency." *Id.* (quoting *Daneshvar v. Ashcroft*, 355 F.3d 615, 619 n.2 (6th Cir. 2004)); *see also Amir v. Gonzales*, 467 F.3d 921, 925 n.4 (6th Cir. 2006). "If discrepancies 'cannot be viewed as attempts by the applicant to enhance his claims of persecution, they have no bearing on credibility.'" *Sylla*, 388 F.3d at 926 (quoting *Daneshvar*, 355 F.3d at 623). In addition, when it occurs "in the context of a largely consistent account of persecution, reference to an incorrect date is not [a] sufficient basis for discrediting an applicant's account." *Marouf*, 811 F.3d at 185 (Opinion of Merritt, J., with McKeague and White, JJ., concurring in the judgment only).

As noted by the BIA, the IJ rejected the Petitioners' asylum claims based on adverse credibility determinations, which prevented them from establishing either past persecution or a well-founded fear of future persecution. The BIA summarized the IJ's factual findings underlying the credibility determinations as follows:

> In her decision, the Immigration Judge denied the [Petitioners'] applications for asylum and withholding of removal under the Act based on her adverse credibility determination as predicated on inconsistencies between the [Petitioners'] testimonies and the arrest/detention reports in the record, between their respective testimonies, internal inconsistencies within the male [Petitioner's] testimony, and inconsistencies between the male [Petitioner's] testimony and his written application. In this regard, the Immigration Judge cited to the inconsistencies between the female [Petitioner's] testimony and the information contained in the arrest/detention reports as to the place(s) of her arrest(s) in Mauritania, the length of her alleged detentions, and her date and place of birth.

As to the male [Petitioner], the Immigration Judge cited to the internal inconsistencies in his testimony and the inconsistencies between his testimony and written application regarding the year of his alleged sexual assault during detention and the relevant details about the groups to which he belonged in Mauritania. The Immigration Judge also cited to the discrepancies in the [Petitioners'] respective testimonies regarding the details of the male [Petitioner's] arrests and the lengths of his detentions.

(A.R. 3–4 (citations and footnote omitted)) The BIA found "no reason to disturb the Immigration Judge's adverse credibility determinations" as they were based on "inconsistencies in the record [that] go[] to the 'heart' of [the Petitioners'] claims" and the IJ "provide[d] specific, cogent reasons upon which to base [the] adverse credibility finding."

The IJ also found the arrest and detention reports submitted by the Petitioners to be "highly suspect" and fraudulent due to the inconsistencies described above and the suspicious nature of the documents. For example, the reports were purported to be issued on the day of arrest, but contained information about the expected length of detention. Wane testified that she had folded up the original reports while in jail, but the documents submitted to the IJ were not creased. Wane explained that her father mailed the documents to her and may have obtained re-issued reports from the police. The IJ found it implausible that the police would issue such a document in the first place, let alone re-issue it for the benefit and convenience of an alleged detainee. As a result of the inconsistencies between the Petitioners' testimony and the reports, and the suspicious nature of the reports themselves, the IJ found that they were fraudulent. The IJ gave them "no weight" and also found that they undermined the Petitioners' overall credibility.

The IJ also discounted the Petitioners' other corroborating evidence, finding that "between [the Petitioners'] lack of credibility and the Court's belief [that] the arrest and detention reports are fraudulent, [the] reliability of their remaining corroboration . . . is

undermined." The IJ "review[ed] all of the corroboration" and specifically discussed two other pieces of evidence, affidavits from Wane's alleged co-arrestees and a letter from Wane's doctor in the United States. The affidavits "were considered but due to Ms. Wane's lack of credibility, they are insufficient to independently establish her claim of past persecution." The IJ expressed "no reason to doubt" the doctor's letter, which verified that Wane had undergone FGM, but determined that the letter did not provide evidence of how, when, or where the FGM took place, and due to Wane's lack of credibility, she could not establish those key facts through her testimony.

In short, the IJ found that the Petitioners failed to establish that they were eligible for asylum because they had not presented credible testimony or reliable corroborating evidence demonstrating past persecution or a well-founded fear of future persecution based on a protected ground. The IJ also determined that, given the higher burden of demonstrating eligibility for withholding of removal, those claims also failed, and given their lack of credible or reliable testimony or evidence, Petitioners were further unable to establish eligibility under CAT.

Substantial evidence supports the BIA and IJ's adverse credibility determinations. The IJ provided specific reasons and findings in support of the credibility determinations, *Sylla*, 388 F.3d at 926, many of which the BIA summarized in its opinion, as described above. The BIA reasonably concluded that the credibility findings were "based on issues that go to the heart" of the Petitioners' claims. *Id.* Unlike the inaccuracies in *Marouf*, on this record we cannot say that Petitioners' inability to accurately recall dates occurs "[i]n the context of a largely consistent account of persecution." 811 F.3d at 185. It was therefore proper for the IJ and BIA to invoke this inconsistency when determining credibility.

Furthermore, the IJ reasonably concluded that the Petitioners' lack of credibility, combined with the court's finding that they had submitted some fraudulent documents, undermined the reliability of their other corroborating evidence. *See Gjolaj v. Keisler*, 252 F. App'x 64, 69 (6th Cir. 2007); *cf. Selami v. Gonzales*, 423 F.3d 621, 626 (6th Cir. 2005); *Sterkaj v. Gonzales*, 439 F.3d 273, 277–78 (6th Cir. 2006).

With neither reliable corroborating evidence nor credible testimony, the Petitioners could not establish their asylum claims. *See Perlaska v. Holder*, 361 F. App'x 655, 662 (6th Cir. 2010); *Marikasi v. Lynch*, 840 F.3d 281, 288–92 (6th Cir. 2016). Because the BIA and IJ's decisions are supported by substantial evidence, we deny the petition for review. *Sylla*, 388 F.3d at 925. The IJ's conclusion that the Petitioners' lack of credible testimony or reliable corroborating evidence also rendered them ineligible for withholding of removal under the INA and CAT is similarly supported by substantial evidence. *See Bi Qing Zheng v. Lynch*, 819 F.3d 287, 296 (6th Cir. 2016); *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005).

### III.    CONCLUSION

Because the BIA and IJ's adverse credibility determinations are supported by substantial evidence, we **DENY** the petition for review.